**STATE of Minnesota, Appellant,**

v.

**Farah Abshir WARSAME, Respondent.**

No. A05–488.

Court of Appeals of Minnesota.

Aug. 9, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, MN, for appellant.

Mark D. Nyvold, Richard J. Malacko, St. Paul, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; WILLIS, Judge; and STONEBURNER, Judge.

## OPINION

STONEBURNER, Judge.

The state appeals the district court's pretrial ruling that the victim's statements to a police officer describing how appellant threatened her and inflicted her obviously fresh injuries were testimonial and therefore inadmissible at trial under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Because we conclude that the district court erred in determining that the statements were testimonial, we reverse and remand to the district court for a determination of admissibility based on exceptions to the hearsay rule.

## FACTS

Eden Prairie police officer John Wilson responded to a 911 call regarding respondent's address. Wilson arrived at the scene within two minutes and was flagged down by a woman in the middle of the street two or three houses away from respondent's address. As soon as Wilson stopped his car, the woman stated, "My boyfriend just beat me up." The officer determined that the woman, N.A., was associated with the call for which he was dispatched and began to assess her injuries. He observed a bump on her head approximately the size of a baseball that was swollen, red, and appeared fresh. Wilson had N.A. sit on the curb because she appeared potentially faint, grabbed his EMT bag, and checked the rest of her head and neck area. He observed fresh bruising on her neck. N.A. told Wilson she had been choked. Wilson asked N.A. "some form of open-ended question of what happened." N.A. told Wilson that when her boyfriend (respondent) came home, she wanted to talk, he did not, and

they argued. He went to the kitchen, grabbed a cooking pot, and struck her in the head with it. She fell on the bed and he got on top of her and was choking her. Her sister tried to get respondent off of her. Respondent then went into the kitchen, got a knife, and came after her, threatening to kill her, and chased her from room to room.

N.A., who was crying and shaking as she talked to Wilson, said she was very frightened and believed respondent was going to kill her. She said she was three months pregnant but did not believe she sustained any injuries that could harm the baby. She said respondent left in a car with one of her sisters. N.A. told Wilson she had tried to call 911. All of the phone lines were cut, so she was walking to the police department, which was approximately one block from her house, to report the assault.

Officer Robert Olson arrived at the scene about one or two minutes after Wilson arrived. He had Wilson illuminate the side of N.A.'s head with his flashlight and observed "one of the largest lumps ... that I've ever seen." Olson heard N.A. give Wilson a description of respondent. Olson relayed the description over the radio along with the information that respondent had a knife. Olson left the scene after three to five minutes to investigate the house.

Respondent was charged with one count of domestic assault and one count of making terroristic threats. When N.A. failed to respond to the state's subpoena, the state moved for admission of her statements under the excited-utterance exception to the hearsay rule.[1] The district court concluded that everything except N.A.'s

---

1. N.A.'s sister was present during the assault and talked to Olson at the house. She also failed to respond to the state's subpoena, and the district court denied the state's motion to admit her statements based on the conclusion that those statements were also testimonial. The state has not appealed that ruling.

initial statement "My boyfriend just beat me up," was testimonial and inadmissible under *Crawford.* The district court did not reach the issue of whether the statements were excited utterances or fell under any other exception to the hearsay rule. This appeal by the state followed.

## ISSUE

Did the district court err in ruling that N.A.'s statements made near the scene of her assault as an officer assessed and treated her injuries were testimonial and therefore inadmissible under *Crawford v. Washington* ?

## ANALYSIS

### I. Standard of review

■■■■ When the state appeals from the pretrial ruling of a district court suppressing evidence, an appellate court will reverse the district court's determination only if the state demonstrates clearly and unequivocally that the district court erred and that, unless reversed, the error will have a critical impact on the outcome of the trial. *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977). The state must show that the suppression of evidence significantly reduces the likelihood of a successful prosecution. *State v. Joon Kyu Kim,* 398 N.W.2d 544, 551 (Minn.1987). The same standard applies to an appeal from a pretrial ruling that evidence is inadmissible under *Crawford. See State v. Krasky,* 696 N.W.2d 816, 818 (Minn.App. 2005).

Respondent does not dispute that the district court's ruling has a critical impact in this case because, without N.A.'s statements, there is no evidence to support the felony charge of terroristic threats.

### II. Are N.A.'s statements testimonial?

■■■■ In *Crawford,* the United States Supreme Court held that testimonial hearsay evidence is only admissible in a criminal trial against a defendant when the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant about the evidence. *Crawford v. Washington,* 541 U.S. at 68, 124 S.Ct. at 1374. The district court concluded that the statements at issue in this case are testimonial, and, because respondent has not had an opportunity to cross-examine N.A. about the statements, they are inadmissible. Whether a statement is "testimonial" under *Crawford* is a question of law that this court reviews de novo. *See Krasky,* 696 N.W.2d at 818. We will reverse a district court's factual findings only if they are clearly erroneous. *State v. Spears,* 560 N.W.2d 723, 725 (Minn.App. 1997), *review denied* (May 28, 1997).

*Crawford* left the definition of "testimonial" open, but noted various formulations of "testimonial" statements:

> ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, ... extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony or confessions, [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Krasky,* 696 N.W.2d at 819 (quoting *Crawford,* 541 U.S. at 51–52, 124 S.Ct. at 1364). *Crawford* also gives examples of statements that would be included in the definition of "testimonial": (1) prior testimony

at a preliminary hearing, before a grand jury, or at a former trial; (2) formal testimonial material such as affidavits, depositions, or confessions; and (3) a formal statement to government officers or statements taken by police officers in the course of interrogation. 541 U.S. at 51–52, 68, 124 S.Ct. at 1364, 1374.

In a recent case involving whether statements made in a 911 call were testimonial under *Crawford*, this court found it unnecessary to determine whether statements made by assault victims to police officers who responded to their 911 call are "testimonial," but we stated:

> We are not convinced that a police response to an incident when the victims are in distress and primarily concerned with ensuring that their assailant has been apprehended satisfies any of the formulations or examples of testimonial hearsay provided by the Supreme Court.... This dialogue, although certainly part of an investigative process, is not an "interrogation" and does not result in a formal statement....
>
> The statements are fundamentally different from "testimonial" statements taken in anticipation of trial. They lack the formalized nature of a deposition, affidavit, interrogation, or grand jury testimony. [The victims'] statements are highly unlikely to be calculated for effect in future legal proceedings. Their narrative statements following the stressful events are neither "solemn" declarations .... nor accounts of a crime made "with an eye toward trial."

*State v. Wright*, 686 N.W.2d 295, 305 (Minn.App.2004) (citations omitted), *review granted* (Minn. Nov. 23, 2004). In *Wright*, the district court determined that the victim's statements to the officers were excited utterances, which this court considered, stating: "[Victim's] demonstrated emotional distress—the very quality that justified

the admission of their statements as excited utterances—is inconsistent with a determination that they were made with a belief that such statements 'would be available for use at a later trial.' " *Id.*

In this case, the district court found that the information at issue:

> was in response to questioning by the officer. There was no testimony that was done to effect an arrest. It was clearly done to obtain evidence that could be used at trial. [N.A.] knew that she was no longer in danger as she was safely in the presence of a police officer. She would be less deeply affected by the trauma of the situation. 15 to 20 minutes is sufficient time to reflect on the evening's events and provide detailed information. It is clear to this court that this is information that a reasonable person would be expected—could expect to be used prosecutorially.

But Wilson testified that N.A. made the statements at issue during the course of the 15 to 20 minutes he was with her. Therefore, the district court's finding that N.A. had 15 to 20 minutes "to reflect" before making the statements is clearly erroneous. And the record reflects that N.A. was crying, shaking, and very upset, the "questioning" by Wilson was in the form of an open-ended question about what happened, and the suspect was still at large when the statements at issue were made.

The state argues that to be testimonial, N.A.'s statements had to have been made in response to "structured police questioning," citing *State v. Burrell*, 697 N.W.2d 579, 600 (Minn.2005). In *Burrell*, there was a *Crawford* challenge to admission of a tape-recorded statement by defendant's mother taken at the police station when defendant's mother voluntarily went to the police station to inquire about the circumstances of her son's arrest. *Id.* at 586–87,

590–91. Because neither the recording nor a transcript of the exchange was made part of the record, the supreme court concluded that it was unable "to make an informed decision whether [mother's] statements are testimonial within the meaning of *Crawford* .... [And we are] unable ... to determine whether her comments are admissible hearsay under *Crawford*, i.e., were not made in response to 'structured police questioning.'" *Id.* at 600. The supreme court remanded the matter to the district court for a such a determination. *Id.* We decline to read *Burrell* to hold that only statements made in response to structured police questioning are testimonial. But *Burrell* obviously strongly supports the state's argument that the open-ended, at-the-scene questions posed by Wilson do not meet the formulation in *Crawford* of statements taken by police in the course of interrogation.

There are many cases from other jurisdictions that have reviewed initial police-victim interaction at the scene of an incident under *Crawford*. Although there is a great deal of conflict among the cases, a majority of post-*Crawford* cases involving initial police-victim interactions at the scene hold that the situations do not involve interrogation and that resulting statements are not testimonial. *See, e.g., State v. Kilday*, 20 Cal.Rptr.3d 161 (Cal. Ct.App.2004) (holding that statement received when officers were responding to a call from hotel manager and encountered victim in lobby when area was unsecured and situation uncertain was nontestimonial); *People v. King*, 2005 WL 170727, at *6, —— P.3d —— (Colo.Ct.App.2005) (holding that when a crime victim makes an excited utterance to a police officer, in a noncustodial setting and without "indicia of formality," the statement is nontestimonial); *People v. Mackey*, 5 Misc.3d 709, 785 N.Y.S.2d 870, 874 (N.Y.Crim.Ct.2004) (holding that statements made by witness

who approached officer that were not in response to structured police questioning, not in a formal setting or a formalized document, and the *primary* purpose of the statements was to seek protection, were nontestimonial); *Hammon v. State*, 829 N.E.2d 444, 458 (Ind.2005) (holding victim's statements to officer relating "basic facts" shortly after the incident occurred were not testimonial). *See also Anderson v. State*, 111 P.3d 350, 354 n. 26 (Alaska Ct.App.2005) (summarizing some of these cases and others).

Many courts have also indicated that a narrative response to a single question from a police officer generally does not indicate "police interrogation" or a testimonial statement. *See, e.g., Anderson*, 111 P.3d at 353 (consulting dictionaries for the "colloquial" meaning of "interrogation," noting that the American Heritage Dictionary 4th ed.2000, defines "interrogate" as "to examine by questioning formally or officially," and that Merriam–Webster Dictionary of Law (1996 ed.) defines it as "to question formally and systematically," and holding that a police officer's single question ("[w]hat happened?") to assault victim was not an interrogation); *Marc v. State*, 166 S.W.3d 767, 2005 WL 1294969, at * 8–9 (Tex.App.2005) (holding that statements of two crying, "almost hysterical" rape victims describing assaults and identifying suspect to police three hours after the fact and twenty minutes after the fact, respectively, were not "testimonial," despite indication that officer asked one of the victims "what had happened," and defendant's argument that statements were "rational, thinking responses to questions posed by the police" resembling police interrogation); *see also Anderson*, 111 P.3d at 357 (J. Mannheimer, concurring) (stating, "[a]s used in everyday speech, 'interrogate' has a more limited meaning than 'ask' or 'inquire' or even 'question.' An 'interroga-

tion' is a formal, systematic questioning that is conducted to advance an official investigation ... Prisoners are interrogated. Suspects are interrogated.").

The reasoning in these cases, together with the *Burrell* decision, leads us to conclude that the district court erred by holding that N.A.'s statements were testimonial simply because they were given in response to some questioning by the officer.

We further conclude that the evidence does not support the district court's finding that the questioning "was clearly done to obtain evidence that could be used at trial." When Wilson was flagged down by N.A., he did not know that she was associated with the 911 call. After he learned that she was, he was still unaware of the nature of the crime, the identity of the alleged assailant, or the medical condition of N.A. Although an officer may be aware that parts of an investigation may ultimately become evidence at trial, there is no evidence in this record that the purpose of Wilson's questioning was to obtain evidence that could be used at trial. *See People v. West*, 355 Ill.App.3d 28, 291 Ill. Dec. 72, 823 N.E.2d 82, 89 (2005) (noting previous case that held responding officers were not "producing evidence in anticipation of a potential criminal prosecution in eliciting basic facts from [the victim] about the nature and cause of her injuries" and holding that purpose of questioning was not to produce evidence for a criminal prosecution, when record contained no indication that responding officer knew the nature of the crime, the location of the assailant, or the medical concerns of the victim) (quotation omitted); *see also Hammon*, 829 N.E.2d at 457 (stating court's belief that "other examples given by the Supreme Court indicate that a 'police interrogation' is properly limited to attempts by police to pin down and preserve state-

ments rather than efforts directed to determining whether an offense has occurred, protection of victims or others, or apprehension of a suspect.").

■ We also reject, as error, the district court's use of its finding that N.A.'s statement "is information that a reasonable person would ... expect to be used *prosecutorially* " as a basis for holding that the statement was testimonial. One of the formulations of a "core class of 'testimonial' statements" in *Crawford* is "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would *be available for use at a later trial.*" 541 U.S. at 52, 124 S.Ct. at 1364 (emphasis added). *Crawford* does not elaborate on what circumstances would give rise to such a reasonable belief on the part of an objective witness. Although we agree with the implication of the district court's use of the words "used prosecutorially" that an objective witness could reasonably believe that information such as that given by N.A. would be the basis of further investigation or taken into consideration by a prosecutor in determining whether to file charges, that is not the formulation described in *Crawford*. We cannot conclude that this knowledge equates with a reasonable belief that the statement itself would be "available for use at a later trial."

■ Some decisions from other jurisdictions that have relied on this formulation to identify whether a statement is testimonial suggest a standard that results in virtually every statement implicating a person in a crime being classified as testimonial. For example, in *Lopez v. State*, 888 So.2d 693, 699–700 (Fla.Dist.Ct.App. 2004), the court, rejecting the assertion that an excited utterance can never be testimonial, stated that:

a startled person who identifies a suspect in a statement made to a police

officer at the scene of a crime surely knows that the statement is a form of accusation that will be used against the suspect. In this situation, the statement does not lose its character as a testimonial statement merely because the declarant was excited at the time it was made.

Although we agree with the proposition that an excited utterance can be testimonial,[2] we note that *Crawford* does not discuss "accusatorial" statements, and we have rejected such a low threshold for determining what gives rise to reasonable knowledge that a statement will be used at a later trial. *See Wright*, 686 N.W.2d at 302 (concluding that statements to 911 operator identifying defendant as assailant "do not fit within the definitions or the examples of 'testimonial' statements" contained in *Crawford* ). In this case, N.A. told Wilson that she was on her way to the police station near her house when she encountered Wilson. She also explained that all of the phone lines at her house had been cut. Her assailant was still at large, and she was injured. That she was seeking police protection and assistance is evident; that she or any objective witness would have believed she was making such statements to be preserved for use at a later trial is not evident.

Although *Wright* did not rule on whether similar statements given to police in that case were testimonial, given the paucity of any other binding authority in this area, we find the comments in *Wright* about the nature of such statements to be very instructive. We conclude that the circumstances of N.A.'s statements do not bring those statements within any of the

formulations or examples of testimonial statements set out in *Crawford*. We recognize that *Crawford* leaves open the issue of whether other types of statements could be found to be testimonial, but no other argument or authority has been presented by respondent that would lead us to conclude that N.A.'s statements were testimonial under *Crawford*.

## III. Admissibility of N.A.'s statements

■ Because we have concluded that N.A.'s hearsay statements are nontestimonial, their admissibility at trial depends on whether the statements are admissible under Minnesota's evidence law. *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374 (stating that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law....."). In this case, the state sought to admit the statements as excited utterances. Because the district court first determined that the statements were inadmissible because they were testimonial, the district court did not reach the issue of whether they qualify under Minnesota law as excited utterances. We therefore remand for a determination of whether the statements are admissible under any exception to the prohibition against the admission of hearsay evidence.

## DECISION

The district court erred in concluding that an injured victim's statements made to a police officer within nine minutes of a 911 call, concerning the identity of her assailant and the circumstances of the as-

---

**2.** We reject the state's argument that the entire category of excited utterances is exempt from *Crawford* because there was a recognized exception for excited utterances at common law. *Crawford* recognized only a single exception for dying declarations as "sui gen-

eris." 541 U.S. at 56 n. 6, 124 S.Ct. at 1367 n. 6. The excited-utterance exception was "[c]onspicuously omitted," from *Crawford*. *Wright*, 686 N.W.2d at 309 (J. Hudson, concurring specially in part and dissenting in part).

sault were testimonial under *Crawford v. Washington.* Because admissibility of the victim's nontestimonial hearsay statements depends on whether the statements constitute an exception to Minnesota hearsay law, we remand to the district court for such a determination.

**Reversed and remanded.**