IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 6, 2005 Session

**STATE OF TENNESSEE v. LARRIE MACLIN**


**Appeal by permission from the Court of Criminal Appeals
Criminal Court for Shelby County
No. 03-00140    Hon. Chris Craft, Judge.**

———————————————

**No. W2003-03123-SC-R11-CD - Filed January 18, 2006**

———————————————


**AND**


**STATE OF TENNESSEE v. MICHAEL LEBRON ANDERSON**


**Appeal by permission from the Court of Criminal Appeals
Criminal Court for Hamilton County
No. 242279    Hon. Douglas A. Meyer, Judge.**

_____

**No. E2004-00694-SC-R11-CD - Filed January 18, 2006**

_____


We granted permission to appeal these cases and then consolidated them to determine a question
common to both: whether the admission at trial of an unavailable witness's "excited utterance" to
law enforcement officers at the crime scene violated the defendant's right to confront witnesses
against him. We conclude that—depending on the particular facts of a case—an excited utterance
can be "testimonial." If the statement is determined to be "testimonial," then under Sixth
Amendment analysis as outlined in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), and under Article
I, Section 9 of the Tennessee Constitution, which guarantees the defendant's right to "meet the

witnesses face to face," it is inadmissible unless the witness was unavailable and the defendant had a prior opportunity for cross-examination. If the statement is not testimonial, then admissibility is governed by the standards of Ohio v. Roberts, 448 U.S. 56 (1980). We reverse the Court of Criminal Appeals in State v. Maclin and dismiss charges against the defendant for reckless aggravated assault; we affirm the lower court's conviction in State v. Anderson of the defendant for burglary of a building other than a habitation.

**Tenn. R. App. P. 11 Appeals by Permission; Judgments of the Court of Criminal Appeals Affirmed in Part, Reversed in Part**.

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ. joined.

Lance Chism, Memphis, Tennessee, attorney for Defendant-Appellant, Larrie Maclin.

Ardena J. Garth, District Public Defender, Donna Robinson Miller, Assistant District Public Defender, Chattanooga, Tennessee, attorneys for Defendant-Appellant, Michael Lebron Anderson.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michelle Parks, Assistant District Attorney General, attorneys for Appellee, State of Tennessee in State v. Larrie Maclin.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Brent C. Cherry, Assistant Attorney General; William Cox, District Attorney General; and Boyd Patterson, Assistant District Attorney General, for Appellee, State of Tennessee in State v. Michael Lebron Anderson.

**OPINION**

FACTUAL BACKGROUND

*A. State v. Maclin*

On the afternoon of August 28, 2002, Memphis Police Officers Ronald Weddle and James Gaylor were dispatched to a residence in Memphis, Tennessee, to investigate a 911 hang-up call. When they knocked on the door, both the female victim, May Newby, and the defendant, Larrie Maclin, answered the door. The officers informed them that they were responding to a 911 call. Although the defendant told the officers that their assistance was not needed, Ms. Newby, who was crying and very emotional, told the officers that she made the call because the defendant assaulted her.

Ms. Newby gave the following account of events to the officers: The defendant was her boyfriend of nine years. He had picked her up from work that day, and on the way home they got

into an argument. At one point, the defendant pulled a pistol from between the seats, pointed it at her head, and told her that he would shoot her if she did not be quiet. When she continued to argue with him, the defendant began hitting her in the face with his hands and again threatened to kill her—and her children—if she did not stop arguing. He also threatened to hit her with the pistol but never did so. When she and the defendant arrived at the house, he wrapped the gun in a blue towel and placed it somewhere inside the truck. Once inside the house, she and the defendant continued to argue, and the defendant struck her several times in the head with his hands.

Officer Weddle testified that when he and Officer Gaylor arrived, Ms. Newby's face was noticeably swollen, and the inside of her lip was split and bleeding. After hearing her version of events, they asked the defendant if he had anything to say. He refused to give a statement. Thereafter, the officers detained the defendant. They also looked through the windows of his truck and saw, in plain view, the barrel of a weapon from under a blue cloth on the seat. Police confiscated the gun, a .38 caliber revolver loaded with five live rounds.

The defendant was arrested and later indicted for (1) aggravated assault by knowingly causing Ms. Newby to reasonably fear imminent bodily injury by displaying a deadly weapon[1] and (2) being a felon in possession of a handgun.[2] Before trial, Ms. Newby died and was therefore unavailable to testify at trial. The defendant moved to exclude her statements to police on the grounds that (1) they were not excited utterances and (2) to admit them would violate his right to confront a witness against him. The trial court, however, ruled that the victim's statements were excited utterances and admissible at trial.

At trial, the parties stipulated that Ms. Newby died of causes unrelated to acts of the defendant or the facts of the case and, therefore, she was unavailable as a witness. The parties also stipulated that at the time of the alleged offenses, the defendant was a felon, stemming from a 1980 conviction. The evidence presented to the jury consisted primarily of the testimony of Officer Weddle, who testified concerning Ms. Newby's statements at the scene. The defendant testified to the following: That on the date of the alleged offense, he fired the victim, who worked for him, because she left the office unattended that day for an extended period. When she returned to the office, her face was already swollen and she appeared upset.[3] She was carrying the gun in a paper sack. He admitted that he and the victim had argued that day, but he denied hitting her or threatening her with the gun.

---

[1] Tenn. Code Ann. § 39-13-102(a)(1)(B) (1997 & Supp. 2001).

[2] Tenn. Code Ann. § 39-17-1307(b)(1)(A) (1997 & Supp. 2001).

[3] The implication from the defendant's version of the events was that Ms. Newby had been assaulted by someone else before she returned to the office that day.

The jury gave credence to Ms. Newby's account of events, as related through Officer Weddle, and found the defendant guilty of the lesser offense of reckless aggravated assault[4] and being a felon in possession of a handgun. The trial court imposed concurrent sentences of four years and two years for the respective convictions.

The defendant appealed, raising numerous issues, including (1) whether admission of the victim's hearsay statements to police violated his right to confrontation; (2) whether the victim's hearsay statements to police were improperly characterized as "excited utterances" and admitted under a hearsay exception in Tennessee Rule of Evidence 803(2); and (3) whether the trial court improperly instructed the jury on the charge of reckless aggravated assault.[5] The Court of Criminal Appeals held that the victim's statements were not "testimonial" in nature; therefore, the requirements of the recent United State Supreme Court decision Crawford v. Washington, 541 U.S. at 68,—which conditions admissibility of out-of-court testimonial statements on unavailability of the witness and a prior opportunity for cross-examination—did not apply. Since the statements were characterized as "nontestimonial," the court applied the test of Ohio v. Roberts, 448 U.S. at 66, to determine whether the victim's statements were admissible under a "firmly rooted hearsay exception" or bore particularized guarantees of trustworthiness. The court concluded that the statements qualified as excited utterances under Tennessee Rule of Evidence 803(2) and were properly admitted. Regarding the jury instruction on reckless aggravated assault, however, the court concluded that the trial court erred by failing to include the element of "bodily injury" and that the error was not harmless. Accordingly, the court remanded the case to the trial court for retrial on the offense of reckless aggravated assault.

The defendant applied for, and this Court granted, permission to appeal the following issues: (1) whether the defendant's right to confrontation was violated; (2) whether the victim's hearsay statements were improperly admitted; and (3) whether reckless aggravated assault is a lesser included offense of aggravated assault by causing another to reasonably fear bodily injury.

## B. *State v. Anderson*

On August 5, 2002, shortly after 10:00 p.m., Officer Brian Smith of the Chattanooga Police Department was patrolling the 1600 block of Adams Street in downtown Chattanooga when he heard a burglar alarm. As he approached the 600 block of Main Street and tried to locate the source of the alarm, he saw a group of juveniles standing on the sidewalk. They flagged him down and, responding to his inquiry about what was wrong, told him that a large African-American male with a bald head just kicked in the door of a business across the street. They were all speaking at once. When he asked whether the man was still inside, they responded that he was.

---

[4] Tenn. Code Ann. § 39-13-102(a)(2) (1997 & Supp. 2001).

[5] Maclin's conviction for being a felon in possession of a handgun was affirmed by the Court of Criminal Appeals and is not an issue for us here.

Officer Smith went to the door pointed out by the juveniles and pushed on it. The door was open and unsecured, and a light was on inside the building. Officer Smith then requested backup units. As more officers arrived, Officer Smith pushed the door open and saw the defendant, Michael Anderson, running out from behind a display counter. After the defendant was arrested, Officer Smith, another officer, and a K-9 unit checked the building for other suspects. No one else was found inside. The office had been ransacked, with drawers pulled out, file cabinets damaged from forced entry, computers overturned, and papers scattered everywhere. The inside burglar alarm had been ripped off the wall and smashed. Ultimately, however, the only item determined to be missing was some change that had been left in the cash register when the store closed earlier that evening. The defendant began to moan and complain of chest pain. He was taken to Erlanger Hospital for evaluation. While waiting to be seen, the defendant saw a hospital employee he knew. He commented to the hospital employee that he was "getting too old to be doing this kind of stuff," and he apologized to Officer McCommon for making him come out and do "all the stuff that we are having to go through."

The defendant was charged with burglary of a building other than a habitation.[6] At trial, the State was unable to locate the juvenile witnesses who flagged down Officer Smith. Following a pretrial hearing on a motion to suppress the juveniles' statements, the court ruled that the statements, although hearsay, were excited utterances and admissible as an exception to the hearsay rule. The trial court allowed Officer Smith to testify, among other things, that the juveniles near the scene stated they saw a large African-American male with a bald head kicking in the door of the business. The defendant rested without presenting any evidence. The jury found the defendant guilty. Following a sentencing hearing, the trial court sentenced him as a habitual offender to twelve years.

On appeal to the Court of Criminal Appeals, the defendant argued that permitting Officer Smith to testify about the juveniles' statements violated his right to confront the witnesses against him. The court concluded that the statements at issue were excited utterances. The court acknowledged the holding of Crawford v. Washington that testimonial hearsay against a criminal defendant is not admissible unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. However, the court held that an excited utterance, by its very nature, is not "testimonial." Accordingly, the court held that the juveniles' statements were admissible under the excited utterance exception to the hearsay rule.

The defendant applied for, and this Court granted, permission to appeal the following issues: (1) whether admission of the juvenile witnesses' hearsay statements violated his right to confrontation and (2) whether the juvenile witnesses' hearsay statements to police were improperly admitted under a hearsay exception.

---

[6] Tenn. Code Ann. § 39-14-402 (1997 & Supp. 2002).

## ANALYSIS

### A. Standard of Review

As a general rule, questions concerning the admissibility of evidence rest within the sound discretion of the trial court; an appellate court will not interfere with the exercise of this discretion absent a clear abuse appearing on the face of the record. See State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997); State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993); State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992). However, the issue of whether the admission of hearsay statements violated a defendant's rights under the Confrontation Clause is purely a question of law. Lilly v. Virginia, 527 U.S. 116, 125 (1999); see also Abdur'Rahman v. Bredesen, __ S.W.3d __ (Tenn. 2005) (stating that "[a] constitutional claim that is resolved after an evidentiary hearing generally presents a mixed question of law and fact"). The application of the law to the facts found by the trial court is a question of law that this Court reviews de novo. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997); Beare Co. v. Tenn. Dep't of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993). In this case, there being no dispute about the facts, but only about whether the admission of the absent witnesses' testimony violated the Confrontation Clause, our review is de novo.

### B. Summary of the Issues

The primary issue to be addressed by this Court in these consolidated cases is whether the admission of the respective hearsay statements violated the defendants' right to confront the witnesses against them. Under the Sixth Amendment analysis of Crawford v. Washington, this requires a determination, first, of whether the statements were "testimonial" in nature. If so, a showing of unavailability of the witnesses and a prior opportunity for cross-examination would be required. 541 U.S. at 68. Second, if not testimonial, the Court must determine whether such hearsay statements were admissible under Ohio v. Roberts, 448 U.S. 56 (1980),—either because they fell within a firmly rooted exception to the hearsay rule or because they otherwise bore a particularized guarantee of trustworthiness. Crawford, 541 U.S. at 68.

### C. The Federal and State Constitutional
### Rights to Confrontation

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This constitutional guarantee is applicable to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403 (1965). In addition, Article I, Section 9 of our own Tennessee Constitution guarantees the accused the right "to meet the witnesses face to face." Although the two provisions are not identically worded, this Court has largely adopted the standards used by the United States Supreme Court under the Sixth Amendment in determining whether the Tennessee constitutional right has been violated. State v. Bush, 942 S.W.2d 489, 511 n.2 (Tenn. 1997); State v. Middlebrooks, 840 S.W.2d 317, 332 (Tenn. 1992); State v. Causby, 706 S.W.2d 628, 631 (Tenn. 1986); State v. Armes, 607 S.W.2d 234, 236-37 (Tenn. 1980).

The Confrontation Clause provides two types of protection for criminal defendants: (1) the right to physically face the witnesses who testify against them and (2) the right to cross-examine the witnesses. State v. Williams, 913 S.W.2d 462, 465 (Tenn. 1996) (citing Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987), and Middlebrooks, 840 S.W.2d at 332). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. 836, 845 (1990); see also California v. Green, 399 U.S. 149, 157-58 (1970). With respect to the right to physically confront one's accusers, this Court has observed that "[t]he 'face to face' language found in the Tennessee Constitution has been held to impose a higher right than that found in the federal constitution." State v. Deuter, 839 S.W.2d 391, 395 (Tenn. 1992). A defendant exercises his right of confrontation through the legal procedure of cross-examination, described as the "'greatest legal engine ever invented for the discovery of truth.'" Green, 399 U.S. at 158 (quoting 5 Wigmore § 1367).

For almost twenty-five years, the question of whether the prior statement of an unavailable witness could be admitted into evidence against a criminal defendant at trial was governed by Ohio v. Roberts, 448 U.S. 56 (1980). That case established the rule that

> when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

Id. at 66. Thus, under Roberts, an out-of-court statement by an unavailable witness is admissible if it (1) falls within a firmly rooted exception to the hearsay rule or (2) contains such particularized guarantees of trustworthiness that adversarial testing of the statement through cross-examination would add little to the assessment of whether the evidence is reliable.

### D. *Crawford v. Washington*

In March 2004, the United States Supreme Court changed Confrontation Clause analysis by overruling Roberts, at least insofar as testimonial out-of-court statements are concerned. In Crawford v. Washington, the Court concluded that the rationale of Roberts strayed too far from the original intent of the Framers:

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." . . . Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a

procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.

541 U.S. at 61. The Court noted that the principal evil that the Confrontation Clause was intended to deter was "the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." Id. at 50. The Court rejected the view that regulation of out-of-court statements could be accomplished solely by the rules of evidence. Id. at 50-51. Thus, with respect to "testimonial" hearsay, the Supreme Court overruled Roberts because of the tendency under the Roberts test "to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." Id. at 63.

The Court announced a new test to determine the admissibility under the Confrontation Clause of hearsay offered against an accused. Testimonial statements may not be offered into evidence unless two requirements are satisfied: (1) the declarant/witness must be unavailable and (2) the defendant must have had a prior opportunity to cross-examine the declarant/witness. Id. at 68. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Id. at 68-69.

The Court clarified that the Confrontation Clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'" Id. at 51 (quoting 1 N. Webster, An American Dictionary of the English Language (1828)). The Court defined "testimony" as typically a "'solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Id. (citing Webster). The Court declined to give a comprehensive definition of what it meant by "testimonial" statements. Id. at 68. It did, however, describe three formulations of testimonial statements:

> Various formulations of this core class of "testimonial" statements exist: [1] "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; [2] "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; [3] "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

Id. at 51-52 (citations omitted). Although the Court declined to settle on a single formulation, it did note that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." Id. at 68. It also stated that "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." Id. at 52.

-8-

*E. Testimonial vs. Nontestimonial*

After Crawford, the threshold question in any Confrontation Clause case is whether a challenged statement is testimonial or nontestimonial.[7] If it is testimonial, the statement is inadmissible unless (1) the declarant is unavailable and (2) the accused had a prior opportunity to cross-examine the declarant. Id. If it is not testimonial, then the states are free to apply their own hearsay law to determine the statement's admissibility.[8] Id. Courts across the country are grappling with the distinction between "testimonial" and "nontestimonial" hearsay and coming to different, often conflicting, results. This is our first opportunity to address the issue.[9]

In defining "testimonial," the common nucleus of the various pronouncements enunciated by the United States Supreme Court seems to be that testimony involves a formal or official statement made or elicited with a purpose of being introduced at a criminal trial. The Sixth Amendment grants the accused in a criminal trial the right "to be confronted with the witnesses against him." The term "witnesses," the Court held, embraces all those who "bear testimony," whether at trial or outside the courtroom. Id. at 51. "'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Id. In contrast, the Court noted, casual statements to an acquaintance, business records, or statements in furtherance of a conspiracy are not testimonial. Id. at 51, 56.

Furthermore, the Court clarified that its use of the term "interrogation" was not meant in a technical legal sense, but rather colloquially or generally. Id. at 53 n.4. "Just as various definitions of 'testimonial' exist, one can imagine various definitions of 'interrogation,' and we need not select among them. . . ." Id. Interrogation need not be "sworn testimony": the Court found that the absence of an oath was not dispositive, since the police officers of today have the same investigative and prosecutorial function that the justices of the peace had under the old English Marian statutes. The implication is that statements made to police while they are performing an "investigative and prosecutorial function" are testimony.

Since Crawford, courts across the nation have been asked to determine whether particular statements are testimonial or nontestimonial under divergent factual scenarios. The statements in

---

[7] See United States v. Hinton, 423 F.3d 355, 358 (3rd Cir. 2005) (stating that "[t]he threshold question in any Confrontation Clause analysis . . . is whether the statement is testimonial.")

[8] One commentator suggests that for statements determined to be nontestimonial, it is still prudent to apply the Ohio v. Roberts analysis when determining admissibility. Richard D. Friedman, Adjusting to *Crawford*: High Court Decision Restores Confrontation Clause Protection, 19-SUM Crim. Just. 4 (2004). Friedman, who is a law professor at the University of Michigan School of Law, submitted an amicus brief in Crawford and was second chair to the petitioner's counsel at the argument in the Supreme Court.

[9] The United States Supreme Court has granted certiorari in two cases, presumably to clarify what was meant by the term "testimonial." See Hammon v. Indiana, 829 N.E.2d 444 (Ind. 2005), cert. granted, 126 S. Ct. 552 (U.S. Oct. 31, 2005); Washington v. Davis, 111 P.3d 844 (Wash. 2005), cert. granted, 126 S. Ct. 547 (U.S. Oct. 31, 2005).

question seem to fall within one of several categories: statements made to 911 dispatchers;[10] statements made to police during initial field investigations;[11] statements made by children to authorities or parents;[12] and statements made to family, friends, or acquaintances.[13] The courts have employed divergent tests and rationales to reach varying—sometimes conflicting—conclusions. Because the issue in both cases currently before the Court involves statements made to police during the early stages of investigation, we will review the authorities in that category particularly.

To determine whether statements made to police are testimonial, courts have adopted divergent approaches: (1) a *per se* approach and (2) a case-by-case approach. A minority of courts have ruled—sometimes implicitly, but sometimes expressly—that *all* statements made to police, regardless of the context in which they are made, are testimonial. For example, in Lopez v. State, 888 So.2d 693 (Fla. Dist. Ct. App. 2004), the Florida Court of Appeals concluded that a kidnaping

---

[10] Courts in the following cases held that the 911 calls made were not testimonial for various reasons, including that they were (1) initiated by the victim, (2) made for the purpose of seeking police protection or intervention, (3) made informally, or (4) made for the purpose of stopping crime: United States v. Hinton, 423 F.3d 355, 362 (3rd Cir. 2005); United States v. Brun, 416 F.3d 703, 707 (8th Cir. 2005); Leavitt v. Arave, 383 F.3d 809, 830 n.22 (9th Cir. 2004); People v. Corella, 18 Cal. Rptr.3d 770, 776 (Cal. Ct. App. 2004); Pitts v. State, 612 S.E.2d 1, 5 (Ga. Ct. App. 2005); West, 823 N.E.2d at 92-93 (Ill. Ct. App. 2005); Marquardt v. State, 882 A.2d 900, 916 (Md. Ct. Spec. App. 2005); State v. Wright, 701 N.W.2d 802, 811 (Minn. 2005); People v. Coleman, 791 N.Y.S.2d 112, 113 (N.Y. App. Div. 2005); People v. Moscat, 777 N.Y.S.2d 875, 876 (N.Y. City Crim. Ct. 2004).

Compare the following cases, in which the respective courts held that the 911 calls made were testimonial for various reasons, including that they were (1) made for the purpose of invoking police action and initiating prosecution and (2) that under the factual circumstances of the respective cases, an "objective witness" would reasonably believe that the statements would be available for use at a later trial: People v. West, 823 N.E.2d at 92-93; People v. Dobbin, 791 N.Y.S.2d 897, 900-01 (N.Y. Sup. Ct. 2004); People v. Cortes, 781 N.Y.S.2d 401, 407 (N.Y. Sup. Ct. 2004).

[11] Since this is the precise issue in this case, these cases will be noted in the body of the opinion.

[12] See the following cases involving statements of child witnesses. In general, child witness statements made to government officials or representatives have been characterized as testimonial, while statements made to relatives or friends have been characterized as nontestimonial. See People v. Sisavath, 13 Cal. Rptr.3d 753, 757-58 (Cal. Ct. App. 2004); People v. Vigil, 104 P.3d 258, 262 (Colo. Ct. App. 2004), cert. granted, (Colo., Dec. 20, 2004); State v. Snowden, 867 A.2d 314, 325-26 (Md. 2005); Flores v. State, 120 P.3d 1170, 1178-79 (Nev. 2005); but see People v. Geno, 683 N.W.2d 687, 692 (Mich. Ct. App. 2004) (statement implicating the defendant, which was given by a two-year-old to a Children's Assessment Center interviewer after the interviewer noticed blood in the child's pants, was not testimonial); see also Herrera-Vega v. State, 888 So.2d 66, 69 (Fla. Dist. Ct. App. 2004) (spontaneous statements made by child to her mother while being dressed, and later repeated to her father, were not testimonial).

[13] Numerous courts have determined that statements made to friends, family, or acquaintances, as opposed to a government representative, do not constitute testimonial hearsay. See, e.g., Ramirez v. Dretke, 398 F.3d 691, 695 n.3 (5th Cir. 2005), cert. denied, 126 S. Ct. 51 (2005); United States v. Manfre, 368 F.3d 832, 838 n. 1 (8th Cir. 2004); People v. Butler, 25 Cal. Rptr.3d 154, 161-62 (Cal. App. 2005); People v. Cervantes, 12 Cal. Rptr.3d 774, 783 (Cal. Ct. App. 2004); Compan v. People, 121 P.3d 876, 880-81 (Colo. 2005); State v. Rivera, 844 A.2d 191, 201 (Conn. 2004); Demons v. State, 595 S.E.2d 76, 80 (Ga. 2004); Bray v. Kentucky, __ S.W.3d __ (Ky. 2005) ; State v. Blackstock, 598 S.E.2d 412, 420 (N.C. Ct. App. 2004); Woods v. State, 152 S.W.3d 105, 114 (Tex. Crim. App. 2004), cert. denied, 125 S. Ct. 2295 (2005); State v. Orndorff, 95 P.3d 406, 408 (Wash. Ct. App. 2004); State v. Ferguson, 607 S.E.2d 526, 529 (W. Va. 2004), cert. denied, 126 S. Ct. 332 (2005).

-10-

victim's statements to police were testimonial under the last <u>Crawford</u> formulation.[14]  The court concluded that

> a startled person who identifies a suspect in a statement made to a police officer at the scene of a crime surely knows that the statement is a form of accusation that will be used against the suspect.  In this situation, the statement does not lose its character as a testimonial statement merely because the declarant was excited. . . . Even in his excitement, [the victim] knew that he was making a formal report of the incident and that his report would be used against the defendant.

<u>Lopez</u>, 888 So.2d at 699-700.  Georgia courts also have adopted a broad interpretation of the term "interrogation" that leads to a similar result, generally with a finding that *any* statements to police are testimonial.  <u>See, e.g.</u>, <u>Moody v. State</u>, 594 S.E.2d 350 (Ga. 2004); <u>Bell v. State</u>, 597 S.E.2d 350 (Ga. 2004); <u>Jenkins v. State</u>, 604 S.E.2d 789, 795 (Ga. 2004); <u>Pitts v. State</u>, 612 S.E.2d 1, 5 (Ga. App. 2005), <u>cert. granted</u>, (Ga. Sept 19, 2005).  The Supreme Judicial Court of Massachusetts has adopted a similarly broad definition of the term "interrogation."  <u>See, e.g.</u>, <u>Commonwealth v. Gonsalves</u>, 833 N.E.2d 549 (Mass. 2005)[15] (holding that the term *interrogation* "must be understood expansively to mean all law enforcement questioning related to the investigation or prosecution of a crime" because "if testimonial statements were limited to formal, solemnized, recorded accounts, <u>Crawford</u> would be a recipe to circumvent the confrontation clause by encouraging law enforcement personnel to take elaborate statements informally. . . .").

To be sure, this "per se testimonial" approach has some appeal.  It is certainly easy to apply.  Put simply, if a witness makes an accusatorial statement to a police officer during the course of an investigation, preliminary or otherwise, then it is deemed "testimonial."

Most courts, however, use a case-by-case approach, evaluating the factual circumstances of each case.  These courts generally have held that interrogation was not involved and, thus, that the statements are not testimonial.  <u>See, e.g.</u>, <u>Hammon v. State</u>, 829 N.E.2d 444, 456 (Ind. 2005) (holding that "a 'testimonial' statement is one given or taken . . . [chiefly for the purpose of] preserving it for potential future use in legal proceedings");[16] <u>State v. Warsame</u>, 701 N.W.2d 30, 311-12 (Minn. Ct. App. 2005) (concluding that statements are not "testimonial" simply because they are given in response to police questioning and holding that the critical determination is whether an objective witness would believe that the statements would be preserved for use at a later trial); <u>State v. Hembertt</u>, 696 N.W.2d 473, 482 (Neb. 2005) (noting that the term "police interrogation," as used

---

[14] That is, the "statements . . . were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  <u>Crawford</u>, 541 U.S. at 52.

[15] A petition for certiorari was filed in this case with the U.S. Supreme Court on November 23, 2005 (U.S. No. 05-674).

[16] Since the United States Supreme Court has granted certiorari in <u>Hammon</u>, it is unclear which portions of the Indiana Supreme Court's analysis, if any, will survive.

in Crawford, required "some kind of structured police questioning, intended to elicit information for use in a contemplated prosecution" and applying a subjective standard focused on whether the declarant intended to bear testimony against the accused to be used later), petition for cert. filed, (U.S. Aug. 19, 2005) (pending Jan. 6, 2006, cert. conference, no. 05-5981); People v. Mackey, 785 N.Y.S.2d 870 (N.Y. Crim. Ct. 2004) (considering such factors as (1) the formality of the setting in which the statements were made, (2) whether the statements were recorded, (3) the declarant's primary purpose in making the statements, (4) whether an objective declarant would believe those statements would be used to initiate prosecutorial action and be placed into evidence at trial, (5) the use of structured questioning, and (6) whether the declarant initiated the contact); State v. Davis, 111 P.3d 844 (Wash. 2005) (focusing on the declarant's subjective intent and concluding that there was no evidence that the declarant intended to bear witness in contemplation of later legal proceedings).[17]

Although the case-by-case approach requires more analysis on the part of reviewing courts, we think it is the more reasonable one in terms of fulfilling the function of the Confrontation Clause, i.e., to provide "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. It seems to us that the common denominator in the cases seeking to determine whether a particular statement to a police officer is "testimonial" is whether the declarant was acting in the role of a "witness" at the time the statement was made.[18]

Although some jurisdictions have applied a subjective standard to decide whether a particular witness's statements were testimonial,[19] we believe the language of Crawford points to an objective standard—that is, whether the statement was made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 52.

Using this standard as the overarching consideration, we believe it appropriate to consider the following factors in deciding whether a particular statement is "testimonial": (1) whether the declarant was a victim or an observer; (2) whether contact was initiated by the declarant or by law-enforcement officials; (3) the degree of formality attending the circumstances in which the statement was made; (4) whether the statement was given in response to questioning, whether the questioning was structured, and the scope of such questioning; (5) whether the statement was recorded (either in writing or by electronic means); (6) the declarant's purpose in making the statements; (7) the officer's purpose in speaking with the declarant; and (8) whether an objective declarant under the

---

[17] Again, since the United States Supreme Court has granted certiorari in Davis, it is unclear which portions of the Washington Supreme Court's analysis will survive.

[18] In certain categories of cases—for instance, where information is provided to law enforcement authorities by confidential informants—it seems obvious that statements made to authorities describing criminal activity should be deemed "testimonial." See United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004) (statements of a confidential informant made to authorities for the purpose of investigating and prosecuting a crime are testimonial); United States v. Silva, 380 F.3d 1018, 1020 (7th Cir. 2004) (statements to authorities by a confidential informant are testimonial in nature).

[19] See, e.g., Hammon, 829 N.E.2d at 456; Hembertt, 696 N.W.2d at 482-83; Davis, 111 P.3d at 851.

circumstances would believe that the statements would be used at a trial. This list is not exhaustive; other considerations may also be meaningful depending on the particular facts of the case.

*F. Is an Excited Utterance "Testimonial"?*

The next issue presented in both cases is whether the statements, alleged by the State to be "excited utterances," can be classified as "testimonial." The State argues that an excited utterance can never constitute testimonial hearsay because it is made spontaneously in reaction to a startling event; thus, the declarant speaks in response to that event rather than in anticipation of bearing witness. Various jurisdictions disagree on this issue. Some agree that an excited utterance cannot constitute testimonial hearsay. See United States v. Brun, 416 F.3d 703, 707 (8th Cir. 2005); Anderson v. State, 111 P.3d 350, 354-55 (Alaska Ct. App. 2005); People v. Corella, 18 Cal. Rptr.3d 770, 776 (Cal. Ct. App. 2004); People v. Moscat, 777 N.Y.S.2d 775, 880 (N.Y. Crim. Ct. App. 2004); Key v. State, 173 S.W.3d 72, 76 (Tex. Ct. App. 2005). However, Crawford seems to reject this notion. Referencing the facts of White v. Illinois, 502 U.S. 346 (1992), wherein a child victim made "spontaneous declarations" to an investigating police officer, the Crawford Court characterized those statements as "testimonial," implicitly rejecting the notion that excited utterances are nontestimonial. Crawford, 541 U.S. at 58 n.8.

A second group of cases holds that the excited nature of the utterance has no bearing on whether a particular statement is testimonial. Instead, the focus is entirely on the declarant's objectively reasonable expectations. See State v. Parks, 116 P.3d 631, 639 (Ariz. Ct. App. 2005) (commenting that "[w]hile a declarant's emotional state may 'still' reflection, . . . such a declarant may nevertheless reasonably appreciate or expect that his statement will have an impact on whether an arrest is made, charges are brought or guilt is attributed"), review granted, (Ariz., Nov. 29, 2005); Lopez, 888 So.2d at 699-700 (stating that " a startled person who identifies a suspect in a statement made to a police officer at the scene of a crime surely knows that the statement is a form of accusation that will be used against the suspect"); Commonwealth v. Williams, 836 N.E.2d 335, 338 (Mass. App. Ct. 2005) (assault victim's statements to police made while she was still "shaken, . . . very upset, . . . crying, teary eyed, red eyed" were nevertheless testimonial).[20]

A third group of courts—the majority—considers the totality of the circumstances under which the excited utterances were made to decide whether they are "testimonial." These jurisdictions consider the testimonial hearsay analysis and the excited utterance analysis to be interdependent. In some cases, because the excited utterance is made to police in response to questioning, the court looks to whether the police action amounted to "interrogation," which would make the statement testimonial under Crawford. See, e.g., Drayton v. United States, 877 A.2d 145, 150 (D.C. 2005) (distinguishing between initial on-the-scene questioning done for the purpose of

---

[20] The Massachusetts Appeals Court based its holding on a definition of "police interrogation" that includes preliminary fact gathering and assessment of whether a crime has taken place. Williams, 836 N.E.2d at 338 (citing Commonwealth v. Gonsalves, 833 N.E.2d 549 (Mass. 2005)).

securing the scene [nontestimonial] and questioning done for the purpose of investigation and fact-gathering [testimonial]); Hammon, 829 N.E.2d at 446 (holding that "statements to . . . officers in response to general initial inquiries are nontestimonial but statements made for purposes [of either the declarant or the questioner] of preserving the accounts of potential witnesses are testimonial"); State v. Wright, 701 N.W.2d 802, 811-14 (Minn. 2005) (holding that statements made for the purpose of seeking police intervention nontestimonial; victims, not police, initiated the encounter, and the victims remained emotionally distraught throughout the entire conversation); Hembertt, 696 N.W.2d at 482 (noting that some excited utterances are testimonial and others are not—the pertinent inquiry is whether the declarant was aware or expecting that his or her statements might later be used at a trial); People v. Coleman, 791 N.Y.S.2d 112, 114 (N.Y. App. Div. 2005) (holding that statements made were nontestimonial because the primary motivation of the declarant was to call for assistance).

In some cases, the courts have recognized that the startling event giving rise to an excited utterance may be of such a nature that it dissipates the very qualities that otherwise might render the statement testimonial. See, e.g., People v. King, 121 P.3d 234, 240 (Colo. Ct. App. 2005) (holding that where the statements were made to police in a non-custodial setting, without indicia of formality, and while the victim was under considerable pain and distress, the statements could not be viewed by any reasonable person as being made with the expectation that they would be used prosecutorially and thus were nontestimonial); State v. Lewis, 619 S.E.2d 830, 842 (N.C. 2005) (concluding that the victim's excited utterances at the scene were non-testimonial because (1) the statements were given during the preliminary stages of the investigation, (2) police questioning was unstructured, and (3) the victim would not have reasonably expected that her excited statements would be used at trial, but also holding that the victim's later off-the-scene identification of the defendant was testimonial, stating that "structured police questioning is a key consideration in determining whether a statement is or is not testimonial").

We reject both *per se* approaches—the one that automatically exempts all excited utterances from classification as testimonial hearsay and the one that effectively disregards the excited nature of the utterance. We favor an approach that considers both the testimonial hearsay analysis and the excited utterance analysis and that considers the totality of the circumstances in order to determine whether a particular excited utterance should be deemed testimonial. The primary consideration under such an approach remains whether the declarant was acting as a "witness"—that is, "bearing testimony" against the accused. To this end, we adopt the definition of "testimony" referenced by the Supreme Court in Crawford: "'[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Crawford, 541 U.S. at 51 (quoting Webster). We also note that Crawford emphasized that the types of statements the Court considered "testimonial" were those formal types of statements—including those made in a police interrogation—that a reasonable declarant would expect to be used prosecutorially or at trial. Id. at 51-52.

-14-

*G. Application of the Law*

When the prosecution seeks to introduce a declarant's out-of-court statement, and a defendant raises a Confrontation Clause objection, the initial determination under Crawford is whether the statement is testimonial or nontestimonial. Crawford, 541 U.S. at 68. If the statement is testimonial, then the trial court must determine whether the declarant is available or unavailable to testify. If the declarant is available, then there is no confrontation problem: "[t]he Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." Id. at 59 n.9 (citing California v. Green, 399 U.S. 149, 162 (1970)). If the declarant is unavailable, the trial court must determine whether the accused had a prior opportunity to cross-examine the declarant about the substance of this statement. Id. at 68. If the accused had such an opportunity, the statement may be admissible if it is not otherwise excludable hearsay. If the accused did not have this opportunity, then the statement must be excluded.

If the statement is nontestimonial, the Confrontation Clause analysis does not end. Instead, consistent with Ohio v. Roberts, 448 U.S. 56, the court must determine whether the out-of-court statement bears adequate indicia of reliability—specifically, whether it falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." See Crawford, 541 U.S. at 68 (stating that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framer's design to afford the States flexibility in their development of hearsay law—as does [Ohio v.] Roberts").

## H. *State v. Maclin*

### 1. *Crawford v. Washington Analysis*

Maclin's case involves a common scenario—charges arising from a domestic violence incident, and the victim does not appear to testify. It has been estimated that between eighty and ninety percent of domestic violence complainants recant their accusations or refuse to cooperate with prosecutors. See Tom Lininger, Evidentiary Issues in Federal Prosecution of Violence Against Women, 36 Ind. L. Rev. 687, 709 n.76 (2003).[21] Thus, before Crawford, prosecutors tried many domestic violence cases without the complainant's testimony, relying upon hearsay testimony coming in under an excited utterance or other hearsay exception. See, e.g., Moscat, 777 N.Y.S.2d at 878. It is conceivable that Crawford will have a great effect upon trials of this kind.

In this case, police were summoned to the scene by the victim. When police arrived, in response to the officers' general question of whether everything was okay, the victim launched into a detailed narrative of the defendant's assault on her. We cannot characterize the general inquiry as

---

[21] Admittedly, this case is somewhat different from most cases in that the victim is deceased from causes unrelated to the assault in question. In many of these cases, the victim fails to appear because the parties have reconciled or because of fear of retribution from the assailant.

"police interrogation" in the sense of formalized, structured questioning. However, considering that the victim initiated the contact with police by her 911 call, that any immediate danger subsided upon police arrival, and the extraordinary detail recited in the victim's statements to police—evidencing a comprehension of the significance of her words—these statements are such that the "declarant[] would reasonably [have] expect[ed] [them] to be used prosecutorially." Crawford, 541 U.S. at 51. Further, under these circumstances "an objective witness reasonably [would have] believe[d] that the statement[s] would be available for use at a later trial." Id. at 52. We conclude that, by making these statements to police, the victim was acting as a "witness" giving "testimony" and, thus, that the statements were testimonial. Cf. United States v. Brito, 427 F.3d 53, 62 (1st Cir. 2005) (reasoning that once the immediate danger has subsided, a person who speaks, even if still under the stress of a startling event, is more likely able to comprehend the larger significance of her words; "[i]f the record fairly supports a finding of comprehension, the fact that the statement also qualifies as an excited utterance will not alter its testimonial nature.").

Although the deceased victim is unavailable, there is no evidence and no claim by the State that the defendant previously had an opportunity to cross-examine the victim about these statements. Accordingly, the admission of these statements violated the defendant's Confrontation Clause rights under Crawford. While both the United States Supreme Court and this Court have held that violations of the Confrontation Clause are subject to harmless error review,[22] since the only evidence linking the defendant to the victim's assault was the victim's statements, the error was not harmless. Accordingly, the defendant's conviction for reckless aggravated assault is reversed and dismissed. In light of this disposition, it is unnecessary to reach the lesser-included-offense issue.

### I. *State v. Anderson*

### 1. *Crawford v. Washington* Analysis

The issue is much easier to resolve in Anderson's case. A police officer tracking down the source of an audible burglar alarm was flagged down by teenagers who, in response to the question, "What's going on?," pointed to the building from which the alarm was sounding and told the officer that a "large black man with a bald head" had kicked in the door and was still inside. Clearly the officer was on the scene as a result of the burglar alarm and acting in a preliminary investigational mode, trying to ascertain the source of the alarm and what had caused it. Considering the informal nature of the "flag-down" by bystander witnesses and the general nature of the question, "What's going on?," this can hardly be characterized as an interrogation. Furthermore, the nature of the statement was not accusatory or even directed specifically at the defendant; it was merely intended to direct police intervention to a crime in progress. It is unlikely that the declarants anticipated that their statements would be used prosecutorially or that an objective witness reasonably would have believed that the statements would be available for use at a later trial. Likewise, the officers' purpose in speaking with the witnesses was not to develop evidence for prosecution or trial, but

---

[22] Coy v. Iowa, 487 U.S. 1012, 1021 (1988); State v. Gomez, 163 S.W.3d 632, 647 (Tenn. 2005).

merely to determine what was happening and what type of police intervention was needed. The totality of these circumstances leads us to the conclusion that the declarants were not acting as "witnesses" giving "testimony" and, thus, that their statements were nontestimonial. Cf. United States v. Luciano, 414 F.3d 174, 180 n.3 (1st Cir. 2005) (teen witness who saw a man pointing a gun at a woman flagged down a passing police cruiser and reported what he had seen; the court held that the statement was an excited utterance made for the sole purpose of securing assistance for the woman in danger and, thus, was not testimonial). Accordingly, the admissibility of the statements at issue is governed by Ohio v. Roberts.

## 2. *Ohio v. Roberts Analysis*

Under Ohio v. Roberts, an out-of-court statement is admissible if it falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." Roberts, 448 U.S. 66. We note that both the United States Supreme Court and this Court have held that the excited utterance exception is firmly rooted. See White, 502 U.S. at 355 n.8; State v. Taylor, 771 S.W.2d 387, 393-94 (Tenn. 1989). Accordingly, the question is whether the statements of the juvenile eyewitnesses were exited utterances under Tennessee Rule of Evidence 803(2).

## 3. *Excited Utterance Analysis*

As noted above, the excited utterance exception requires that (1) there be a startling event or condition; (2) the statement relate to the startling event or condition; and (3) the statement be made while the declarant was still under the stress or excitement of the event or condition. Tenn. R. Evid. 803(2); State v. Stout, 46 S.W.3d 689, 699-700 (Tenn. 2001). We agree with the State that personally observing the inception of a burglary in progress is a startling event. Further, the declarants' statements in this case clearly relate to their observations of the origin of the burglar alarm. Finally, from the short time that passed from Officer Smith's first hearing the burglar alarm to his contact with the declarants, and from the declarants' demeanor, which Officer Smith described as "excited" and "speaking at once," it is clear that they were still under the stress and excitement of the startling event. Accordingly, we hold that the trial court did not abuse its discretion in concluding that the declarants' statements qualified as "excited utterances" and were admissible.

## CONCLUSION

We adopt a case-by-case approach to decide whether a proffered hearsay statement is "testimonial," with the primary consideration being whether the declarant was acting in the role of a "witness" at the time the statement was made. Furthermore, we follow the lead of the United States Supreme Court, whose language in Crawford appears to favor application of an objective standard in deciding whether a particular statement is "testimonial"—that is, whether the statement was made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 52. The same objective standard applies when the statement is an "excited utterance." Thus, depending on the

facts of a particular case, an excited utterance can (or cannot) be "testimonial" in nature. If the excited utterance is determined to be "testimonial," then under the Sixth Amendment analysis used in Crawford v. Washington, 541 U.S. 36 (2004), and under our own Tennessee Constitution Article I, Section 9 right to "meet the witnesses face to face," the statement is inadmissible unless the witness was unavailable and the defendant had a prior opportunity for cross-examination. If the excited utterance is not testimonial, then admissibility is governed by Ohio v. Roberts, 448 U.S. 56 (1980). Accordingly, the opinions of the Court of Criminal Appeals are modified follows: for defendant Larrie Maclin, the conviction for reckless aggravated assault is reversed and the charges dismissed; for defendant Michael Lebron Anderson, the conviction for burglary is affirmed.

The costs of the appeal in the matter against defendant Larrie Maclin are taxed to the State of Tennessee. It appearing that the defendant Michael Anderson is indigent, the costs of his appeal are taxed to the State of Tennessee.

_____
WILLIAM M. BARKER
Chief Justice