IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 16, 2008 Session

## MICHAEL LEBRON ANDERSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 262240     Barry A. Steelman, Judge**

_____

**No. E2008-00439-CCA-R3-PC - Filed August 13, 2009**
_____

The petitioner, Michael Lebron Anderson, was convicted of burglary of a building other than a habitation and was sentenced to twelve years in the Tennessee Department of Correction. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective. The post-conviction court denied the petition, and the petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Daniel J. Ripper, Chattanooga, Tennessee, for the appellant, Michael Lebron Anderson.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany, Assistant Attorney General; William H. Cox, III, District Attorney General; and C. Matthew Rogers, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Factual Background

On direct appeal, this court summarized the proof adduced at the petitioner's trial as follows:

> Officer Brian Smith, of the Chattanooga Police Department, testified that on August 5, 2002, he was patrolling the 1600 block of Adams Street in Chattanooga when he heard the sound of an activated burglary alarm. While attempting to locate the alarm, he noticed a group of juveniles standing on the sidewalk of 600 East Main. As he approached the group, he observed that they were flagging him down, so he stopped and asked them what was going on. Speaking at once, the juveniles told Smith that a "large black man with a bald head just kicked in the door of a business across the street" and was "still

inside." Smith testified that, after hearing the juveniles' statements, he radioed his location to dispatch, reported a possible burglary in progress, and proceeded to investigate. Smith drove across the street to the business, discovered the door open, and found the [petitioner] inside behind the display counter of the business. After waiting for backup officers to arrive, he arrested the [petitioner]. Smith described the inside of the building as ransacked – drawers were pulled open and papers scattered everywhere. According to Smith, nobody else other than the [petitioner] was found inside the building.

Officer Justin McCommon testified that he was assigned to watch the [petitioner] while the other officers searched the building for additional suspects. While in his custody, the [petitioner] appeared anxious and complained of chest pains. As a result, McCommon took [the petitioner] to the hospital. At the hospital, the [petitioner] apologized to McCommon, saying he was sorry for "making [the officer] come out and work and do all the stuff that we were having to go through." In addition, the [petitioner] mentioned that "he was getting too old to be doing this kind of stuff." Finally, McCommon stated that, after the defendant was taken to jail, five dollars in quarters and a dollar-fifty in dimes were found on the [petitioner's] person.

Charles Stansell testified that he was an employee of the business, Atlas Bolt Company, located at 615 East Main Street. On August 5, 2002, he received notification of a burglary in progress at his place of employment and went down to the business to assess the situation. Upon arrival, Stansell observed the [petitioner] sitting in the back of a police car. Stansell identified the [petitioner] at trial as the same person he saw sitting in the police car. After waiting outside for a period of time, Stansell was allowed into the building in order to inspect the premises and assess the damage. Stansell noticed significant damage to the building's front door. He also noticed that the inside office space was vandalized – broken locks on the file cabinets, desk drawers turned upside down, and papers scattered everywhere. According to Stansell, the only item missing from the business was the change from the cash register. Stansell testified that the cash and checks were always removed from the register prior to closing the store and placed in a secure safe, leaving only the quarters, dimes, nickels, and pennies remaining. However, the register was empty except for pennies.

State v. Michael Lebron Anderson, No. E2004-00694-CCA-R3-CD, 2005 WL 171441, at *1 (Tenn. Crim. App. at Knoxville, Jan. 27, 2005) (footnote omitted), aff'd sub nom. State v. Maclin, 183 S.W.3d 335 (Tenn. 2006). After the conclusion of the proof, the jury found the petitioner guilty of

burglary of a building other than a habitation, a Class D felony. The trial court sentenced the petitioner as a career offender to the maximum sentence of twelve years, sixty percent of which he was to serve in confinement before becoming eligible for parole.

Thereafter, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective by failing to properly advise him that if he were convicted at trial, he would be required, as a career offender, to serve sixty percent of his sentence in confinement before becoming eligible for release. He contended that if he had been adequately informed, he would have accepted the State's offer to plead guilty in exchange for a Range III sentence of ten years with release eligibility after service of forty-five percent. Additionally, the petitioner complained that counsel was ineffective by failing to object to statements made by the State during closing argument, namely the assertion that a female witness had testified that she saw the petitioner enter the business after kicking in the door when no females had testified at trial, the State's comment that the petitioner had "lied" and that his statements to police had been "untrue," and the State's appealing to the jury to render a verdict that would let the "community breathe a little easier."

At the post-conviction hearing, the petitioner's trial counsel testified that she was working for the public defender's office when she was appointed to represent the petitioner. She said that she had conducted numerous bench trials, but the petitioner's case was her first jury trial.

Counsel stated that she met with the petitioner on multiple occasions and had detailed discussions with him about the case. She recalled that during plea negotiations, the State informed her that the case against the petitioner was a "slam-dunk." She said that the State nevertheless offered to allow the petitioner to plead guilty to the charged offense in exchange for a twelve-year sentence as a Range III offender with eligibility for release after service of forty-five percent of the sentence. She stated that she advised the petitioner of the offer but that the petitioner rejected the offer. The State's next plea offer involved a sentence of eleven years, with forty-five percent release eligibility. After counsel advised the petitioner of the second offer, the petitioner rejected it, stating, "That's not much of a break, I might as well take it to trial." The State's final offer required the petitioner to plead guilty to the charged offense in exchange for a sentence of ten years as a Range III offender with service of forty-five percent of the sentence in confinement prior to becoming eligible for release. The petitioner again rejected the plea offer.

Counsel recalled that at approximately 4:00 p.m. on the day before trial, the State informed her of a statement made by the petitioner that it was planning to introduce through an officer. Because of the late notice, on the morning of trial counsel objected to the use of the statement. The trial court overruled the objection but said the use of the statement put the petitioner at a disadvantage. Therefore, the trial court offered to reinstate the State's last plea offer and allow the petitioner to plead guilty to the charged offense and receive a ten-year sentence at forty-five percent. The petitioner elected to proceed to trial. Counsel stated that the defense theory at trial was that the petitioner was guilty of criminal trespass but that he was not guilty of burglary because he did not enter the building with the intent to commit a felony.

Counsel maintained that she discussed with the petitioner the sentence ranges and the amount of time he would have to serve in confinement before becoming eligible for release. Specifically,

counsel informed the petitioner that if he were convicted at trial, he would likely be sentenced as a career offender to the maximum sentence of twelve years, and he would be required to serve sixty percent of the sentence in confinement before becoming eligible for release. She told the petitioner that the State's original offer of twelve years at forty-five percent could potentially result in a fifteen percent decrease in the time he would have to serve in confinement. Counsel said that the petitioner told her, "It's not really going to matter, . . . my record is so bad, they're going to make me do the whole thing." Counsel explained the petitioner's concerns, saying that "we discussed that he was eligible for parole, but based on his history, that it was unlikely that he would be paroled, that he would have to flatten the entire sentence, he would have to serve it out." The petitioner told counsel, "I'm an old man, I've spent a lot of time in, you know, in jail, and that much amount of time is not going to make a difference."

Counsel recalled that during closing argument, the State said, "The eyewitness testified that she saw a person fitting the [petitioner's] description kick in the front door of the building." Counsel acknowledged that no female witnesses testified at trial. Counsel said that one of the juveniles who informed the officer that the petitioner was in the building was a female.[1] Therefore, counsel believed the State just "misspoke" during the closing argument. Regardless, counsel conceded that "[i]f the State argues facts that are not in evidence, generally you should object."

Counsel also recalled that during closing argument, the State told the jury that the petitioner told police he followed a juvenile into the building, then he changed his story and said there was no juvenile and that therefore "obviously he lied. That's not a truthful statement." Counsel explained that prior to trial, she and the petitioner decided that, due to his "bad record," he should not testify. Therefore, counsel questioned the officer regarding the petitioner's version of events so the jury could hear the petitioner's story. Counsel said she did not object to the State's remarks during closing argument concerning the petitioner's veracity. When asked why she failed to object to the remarks, counsel responded, "Frankly, . . . [the petitioner] really didn't testify and he didn't really make a statement, so, you know, I just didn't . . . . I couldn't tell you why."

Counsel further recalled that during closing argument the State asked the jury to "use your common sense and to write an ending to this short story that'll make everyone in the community breathe a little easier." Counsel said she did not object to the State's closing argument, explaining that closing argument is not evidence and that "objecting at that time doesn't necessarily help in those circumstances." She said, "That was part of my trial strategy. I generally am not one to object during opening, closing arguments."

The petitioner testified that he had a few conversations with counsel prior to trial. He maintained that counsel told him about the State's plea offers but that she did not discuss with him the percentage of the sentence he would have to serve in confinement. Specifically, regarding the State's final offer, the petitioner said:

---

[1] In this court's opinion on direct appeal, we noted that "[o]ne of the juveniles who flagged down the officer was identified as Desunta Pitts[,] . . . [but] the State was unable to locate her for trial." Anderson, No. E2004-00694-CCA-R3-CD, 2005 WL 171441, at *2 n.2.

I rejected the ten years . . . at 45 percent, because if I'd of knew that
it was 12 years at 60 percent, I would have took the ten years at 45
percent, but I would automatically took it, because that's what I do,
cop out, you know, and that's what I would have did, you know. I
know the difference between 12 years at 60 and 10 years at 45.

The petitioner further explained, "I'd been in the prison for twelve years and ten years is not that much different, but the difference is, is the percentage of, of 60 percent . . . . If I'd knew it was 60 percent of twelve years, I would have accepted . . . ten years at 45, I would have accepted that."

The petitioner acknowledged that he had prior experience with the criminal justice system, having pled guilty to "quite a few" felonies. He said he understood "the premise" behind the different sentencing ranges. Specifically, he said that counsel advised him he would be classified as a career offender but that he did not understand what being a career offender meant. He also said he understood "range" to mean "percentage, the years that I would be serving." The petitioner maintained that trial counsel never discussed with him the percentage of any given sentence he would be required to serve in confinement. The petitioner acknowledged that he knew he "was taking a risk" by going to trial and that he was chancing a longer sentence.

The post-conviction court took the matter under advisement after the conclusion of the proof. Thereafter, the court entered an order denying the post-conviction petition. The post-conviction court found that "counsel's testimony was credible and the petitioner's less so." The court noted counsel's testimony that she advised the petitioner that if he went to trial, he would likely be sentenced as a career offender and would have to serve at least sixty percent of his sentence in confinement. The court further noted that counsel said she told the petitioner that the State's plea offers included release eligibility after service of forty-five percent of the sentence. Therefore, the post-conviction court found that the petitioner was aware of the plea offer and the sentence he was facing if he went to trial and that counsel was not ineffective in this regard.

Regarding counsel's failure to object to the State's closing argument, the court found that although the statement regarding the female witness was incorrect, the "misstatement was . . . minor and obvious to the jury." The court further found that, given the overwhelming evidence against the petitioner, he suffered no prejudice from the remark.

Finally, regarding the State's appeal to the jury to protect the community, the court found that although the State did "inject an issue other than the issue of the petitioner's guilt or innocence under the applicable law," the petitioner was not prejudiced by trial counsel's failure to object in light of the overwhelming evidence of the petitioner's guilt. Thus, finding that counsel was not ineffective, the post-conviction court denied the post-conviction petition. On appeal, the petitioner challenges the post-conviction court's ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn.

Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

First, we will address the petitioner's claim that his trial counsel was ineffective by failing to provide him with sufficient information regarding his offender classification and the accompanying percentage of the sentence he would be required to serve before becoming eligible for release. The petitioner contends that trial counsel's failure to advise him left him unable to properly consider the State's plea offer of ten years with release eligibility after service of forty-five percent of the sentence.

The post-conviction court specifically found that trial counsel's testimony was credible and that the petitioner's testimony was "less so." Trial counsel testified she advised the petitioner that he would be classified as a career offender and that he would have to serve at least sixty percent of any sentence received upon a jury conviction. She also testified she advised the petitioner that the sentences involved in the State's plea offers provided for release eligibility after service of forty-five percent of the sentence. Counsel said that the petitioner told counsel that given his record, he would likely not be paroled and would have to flatten his sentence. Therefore, he thought the difference between a sentence of twelve years and ten years was insignificant, and he decided to risk going to trial. The post-conviction court found that counsel advised the petitioner of the risks of trial and of the differences between potential sentences. The evidence does not preponderate against the post-conviction court's findings. Thus, we conclude that trial counsel was not ineffective in this regard.

Next, we turn to the petitioner's complaints regarding trial counsel's failure to object to comments made during the State's closing argument. It is well-established that closing argument is an important tool for both parties during a trial; thus, counsel is generally given wide latitude during closing argument, and the trial court is granted wide discretion in controlling closing arguments. See State v. Carruthers, 35 S.W.3d 516, 577-78 (Tenn. 2000) (appendix). "Notwithstanding such, arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." State v. Goltz, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003).

"In determining whether statements made in closing argument constitute reversible error, it is necessary to determine whether the statements were improper and, if so, whether the impropriety affected the verdict." State v. Pulliam, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996). In connection with this issue, we must examine the following factors:

> "(1) the conduct complained of viewed in context and in light of the facts and circumstances of the case[;]
>
> (2) the curative measures undertaken by the court and the prosecution[;]
>
> (3) the intent of the prosecutor in making the statement[;]
>
> (4) the cumulative effect of the improper conduct and any other errors in the record [; and]
>
> (5) the relative strength or weakness of the case."

Id. (quoting Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)).

The petitioner complains about counsel's failure to object to three separate comments the State made during closing argument. First, the petitioner says that although there were no female witnesses at trial, the State argued that "[t]he eyewitness testified that she saw a person befitting the [petitioner's] description kick in the front door of the building." The petitioner maintains that the

-7-

State argued facts not in evidence and that counsel should have objected. We note that generally, "[l]awyers are prohibited from arguing facts which are outside the record." State v. Bowers, 77 S.W.3d 776, 787 (Tenn. Crim. App. 2001). However, improper arguments may, in some cases, be considered harmless. State v. Thomas, 158 S.W.3d 361, 414 (Tenn. 2005) (appendix); see also Tenn. R. App. P. 36(b). In the instant case, the post-conviction court found that the State's "misstatement [regarding a female witness] was . . . minor and obvious to the jury." Moreover, the court found that, given the overwhelming evidence against the petitioner at trial, any error was harmless. After our review of the record, we agree with the post-conviction court that the erroneous argument was harmless and that the petitioner therefore suffered no prejudice as a result of counsel's failure to object to the argument.

Second, the petitioner complains about the following statement made by the State during closing argument:

> What do we know about the [petitioner]? What's his version? His statement to the officers, you guys heard it: There was a juvenile in the building. That's what he told them. That wasn't true. He told them later that there was no juvenile, and then he switched and said there was a juvenile, then finally he said there wasn't a juvenile. So he obviously lied. That's not a truthful statement.

Our supreme court has previously "cited with approval a number of cases wherein remarks of counsel in argument making reference to 'lying' defendants or defense witnesses were allowed, if based upon evidence in the record." State v. West, 767 S.W.2d 387, 394 (Tenn. 1989) (citing State v. Beasley, 536 S.W.2d 328, 330 (Tenn. 1976)). In the instant case, the State's argument was based upon the evidence. The petitioner had posited two conflicting versions of events, both of which could not be true; therefore, at some point, the petitioner lied. Regardless, the post-conviction court found that given the overwhelming evidence against the petitioner, any error was harmless. We agree. Therefore, the petitioner suffered no prejudice in this regard.

Finally, the petitioner complains about trial counsel's failure to object when the State urged the jury to "use your common sense and to write an ending to this short story that'll make everyone in the community breathe a little easier." We note that "community conscience arguments are generally improper." Thomas, 158 S.W.3d at 414. However, the post-conviction court found that although the State did "inject an issue other than the issue of the petitioner's guilt or innocence under the applicable law," the petitioner was not prejudiced by trial counsel's failure to object in light of the overwhelming evidence of the petitioner's guilt. See Goltz, 111 S.W.3d at 8. We agree. Therefore, we conclude that the post-conviction court did not err in finding that the petitioner's trial counsel was not ineffective.

### III. Conclusion

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____

NORMA McGEE OGLE, JUDGE