# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# MIDDLE DIVISION AT NASHVILLE

January 15, 2013 Session

## STATE OF TENNESSEE v. ROBERT WAYNE GARNER

———————————————

**APPEAL FROM THE JUDGMENT OF THE CIRCUIT COURT FOR GILES COUNTY AT PULASKI**
**No. 15034  Jim T. Hamilton, Judge**

———————————————

**No. M2011-02581-CCA-R3-CD - Filed September 30, 2013**

———————————————

The appellant, Robert Wayne Garner, appeals his jury convictions for first degree murder in perpetration of a felony, a Class A felony, see Tenn. Code Ann. § 39-202(a)(1); aggravated arson, a Class A felony, see Tenn. Code Ann. § 39-14-302; and theft of property valued over ten thousand dollars, a Class C felony, Tenn. Code Ann. § 39-14-103. The appellant received the mandatory minimum sentence for first degree felony murder of life in prison. The trial court additionally sentenced the defendant to serve twenty-five years for his conviction of aggravated arson and three years for his conviction of theft. The latter sentences were ordered to be served concurrently, but consecutively to the life sentence for felony murder, for a total effective sentence of life plus twenty-five years. On appeal Garner alleges insufficiency of the evidence; trial court error allowing hearsay testimony; trial court error not allowing impeachment of a witness with a prior conviction; and trial court error in allowing the hearsay of a phone call. After a thorough review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed.**

PAUL G. SUMMERS, Sr. J., delivered the opinion of the Court in which JAMES CURWOOD WITT, Jr., J., joined, and JOSEPH M. TIPTON, P. J., concurred in results.

Mr. Stanley K. Pierchoski, Pulaski, Tennessee, for appellant, Robert Wayne Garner.

Robert E. Cooper, Jr. Attorney General and Reporter; Brent C. Cherry, Senior Counsel, Assistant Attorney General; Lawrence R. Nickell, Jr. and Kyle E. Dodd, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

## I. Facts and Procedural Background

On August 13, 2011, Robert Wayne Garner, after a jury trial, was convicted of first degree murder in perpetration of a felony, aggravated arson, and theft of property over $10,000 and less than $60,000. The jury heard 44 witnesses and viewed 61 exhibits. The District Attorney General presented this circumstantial evidence case. The murder of Brenda Wilburn was a heinous crime. Ms. Wilburn was assaulted, bound, gagged, and her house burned down around her. After three days of testimony and seven hours of deliberation, the jury verdict was unanimous on all counts. Garner was sentenced to life in prison plus 25 years.

## II. Facts and Analysis

### (a) Sufficiency of the evidence

Trial proof indicates Robert Wayne Garner needed money. Mr. Garner was behind in his rent; his electric bill was due; and his daughter's car needed expensive repairs. His wife had previously pawned her jewelry for needed cash. He earned only $125 in his last paycheck as a truck driver. Mr. Garner found a way to get the money he needed. A former tenant of Brenda Wilburn, Garner had visited her only a few days earlier and was familiar with her house. Garner knew Ms. Wilburn kept money in her home, knew she wore expensive jewelry, and knew she lived alone.

The prosecutor's theory of the case was that Garner entered her home on Highway 64 near Pulaski, Tennessee, around 10:00 a.m. on January 19, 2011, and assaulted Ms. Wilburn. He tightly tied her hands behind her back and bound her ankles with electrical wire. Garner placed a plastic bag containing her blood-covered panties over her head. He followed with a second plastic bag, tied securely, effectively smothering Ms. Wilburn. A piece of clothing was found tied around her neck strangling her. Trial testimony revealed Ms. Wilburn probably suffered greatly during the last few minutes of her life.

Garner set fire to the house and fled the premises. Later investigation revealed Ms. Wilburn was already dead when the flames consumed her body. The fire burned for about an hour before a passerby saw smoke and flames coming from the house and called 911.

Firefighters arrived and found a rapidly growing, very hot fire. A quick investigation found Ms. Wilburn's cars still on the premises. Three firemen attempted to enter the dwelling and effectuate a rescue. Firefighters were repelled by the excessive heat and were unable to proceed more than a few feet into the house. Tennessee Bureau of Investigation (TBI) and local police were called to the scene. It took several hours for the fire to cool so debris could be cleared. The intense fire collapsed the two story house into a single mound of smoking embers.

Investigators, sifting the rubble, found the body of Ms. Wilburn located in what was once a walk-in closet. Her body was severely burned. She had first, second, third and fourth degree burns over 90% of her body. Her hands and feet were completely burned off. Clothing protected her head from complete destruction, and the plastic bags on her head were only partially burned. She was nude from the waist down.

The proof showed that while the fire was still burning, Garner had unexplained money. The same day he paid his electrical bill, his rent and offered to make extra payments. That same afternoon he paid cash for the repairs to his daughter's car and payments on his furniture. Garner gave his wife money to pay her probation fees and to go shopping at Walmart. Mrs. Garner paid probation fees of five times the amount she normally paid each week.

Appellant's wife liked jewelry, and Garner gave her a large two-carat solitaire ring and a diamond necklace. The solitaire ring had a unique flaw that made it positively identifiable as belonging to Ms. Wilburn. The ring appraised for $12,000, and the necklace for $750.

The proof showed Mrs. Garner told people Mr. Garner had given her the new jewelry, including the two-carat diamond solitaire ring and the diamond necklace. Garner gave her the jewelry immediately after the incident at Ms. Wilburn's house. Garner also gave her money to redeem her previously pawned jewelry. When Mr. Garner's wife asked him where he got the money and jewelry he responded "you're better off if you don't know." The investigation revealed no credible alternative explanation for Mr. Garner's sudden possession of wealth.

The circumstantial proof continued. Mrs. Garner went to Walmart with a friend and while in the parking lot showed her friend cash totaling $4,800 in one-hundred dollar bills.

The total bills Mr. and Mrs. Garner paid and the money his wife displayed was roughly equal to the amount of money known to be in Ms. Wilburn's possession shortly before her death. Police, canvassing local pawn shops, found pawned jewelry items including a pendant necklace belonging to Mrs. Wilburn. The pawn ticket showed Mrs. Garner pawned the pendant a few days after the murder. Mrs. Garner was questioned by the police, and she wore the unique solitaire ring to the police station for her interview.

A local citizen found a credit card with Ms. Wilburn's name on it lying near a mail box and notified police. Investigators searched along the road from near where Garner lived ending at Ms. Wilburn's house. They found two other credit cards also belonging to Ms. Wilburn, a used condom, pair of shoes and some other items. The shoes were similar to a pair of shoes worn by Mr. Garner previously during a police interview. All items gathered were subjected to tests, and only the credit cards were conclusively tied to the case.

Mr. Garner attempted to establish an alibi. He failed. Garner had served as a police informant for drug related purchases. He called his police contact the afternoon of the fire

and asked what the police knew about the fire.  Garner also called Sheena Huntley, a former business associate, and indicated he had an alibi for the time of the fire, even though there was no reason Sheena Huntley should suspect he would need one.

When Garner was arrested, he told police a story of meeting two men. According to Garner, these same two men had previously assaulted Mr. Garner at a motel. Garner insists he met the two men at the same motel and purchased a bag of assorted jewelry from them for $100. Mr. Garner stated a man (Mr. Gentry) living at the motel was present and could verify his purchase. Upon inquiry by police and in testimony during trial, Mr. Gentry, the man Mr. Garner said would confirm his alibi, vehemently denied ever seeing Mr. Garner at the motel and denied any transaction ever took place in his presence.

When the sufficiency of the evidence is challenged, the  appellate court's standard of review is whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Tenn. R. App. P. 13(e).

A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the prosecution's theory. *State v. Bland*, 958 S.W. 2d 651, 659 (Tenn. 1997). "A verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." *Id.* On appeal, the state is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn from it. *State v. Hall,* 8 S.W.3d 593, 599 (Tenn. 1999). "Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court does not re-weigh of re-evaluate the evidence." *State v. Evans,* 108 S.W. 3d 231, 236 (Tenn. 2003). This court also may not substitute its inferences, drawn from circumstantial evidence, for those drawn by the trier of fact. *State v. Reid,* 91 S.W.3d 247, 277 (Tenn. 2002). The defendant bears the burden of proving that the evidence was not sufficient to sustain the conviction. *Hall,* 8 S.W.3d at 599.

In determining whether the evidence supporting a conviction is insufficient, the appellate court does not ask itself whether is believes that the evidence established guilt beyond a reasonable doubt, but whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass,* 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The evidence was circumstantial. No direct evidence places Mr. Garner at the scene of the crime. The intensity of the fire had degraded much of the DNA. The only conclusive DNA evidence was from Ms. Wilburn, a couple of gloves and a used condom gathered in a roadside search. The condom and gloves could not be associated with the crime, and the DNA did not match any known persons. Mr. Garner argues that because DNA found in a used condom and some gloves found along the road did not match him, it is proof that he was not the perpetrator of Ms. Wilburn's murder or the theft of her money and jewelry. Neither Ms. Wilburn's nor Mr. Garner's DNA was found on the condom or gloves. The condom and gloves neither proves nor disproves any issue.

The jury had an opportunity to hear all the witnesses and judge their credibility. The evidence was presented over several days. The state presented proof that the crimes were meticulously investigated. The defense had ample opportunity to cross-examine all witnesses. The evidence was judged by the jury sufficient to convict beyond a reasonable doubt.

Appellant asserts the evidence of record is insufficient, as a matter of law, to sustain a verdict of guilty beyond a reasonable doubt. The evidence is circumstantial but, interpreted in the light most favorable to the prosecution, is adequate to support Mr. Garner's convictions beyond a reasonable doubt.

Appellant refers to *Marable v. State,* 313 S.W.2d 451 (Tenn. 1958), where the defendant was convicted of second degree murder of her husband, based solely on circumstantial evidence. There, the Tennessee Supreme Court stated that in cases of circumstantial evidence, "the facts must exclude every other reasonable theory or hypothesis except that of guilt." *Id* at 456. However, since *Marable* was decided in 1958, our Supreme Court decided *State v. Dorantes,* 331 S.W. 3d 370 (Tenn. 2011), in which the court determined that in circumstantial evidence cases the state does not have the duty to exclude every other reasonable hypothesis except that of guilt and adopted the standard enunciated by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 (1979). In *Jackson,* the Court rejected a higher standard for circumstantial evidence, and held that direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence. *Dorantes,* 331 S.W.3d at 381. This Court does not re-evaluate the evidence and substitute different interpretations of evidence.

The state alleged appellant perpetrated the offenses of aggravated arson and/or theft in which the victim was killed. The evidence of theft and arson is overwhelming. Inferring Garner's commission of arson and theft is permissible because the petitioner possessed Ms. Wilburn's property in close temporal proximity to the crimes. Ms. Wilburn's death, by reasonable inference, is related to the theft and arson; it was reasonable for the jury to infer that the defendant is responsible for the death of Ms. Wilburn.

Interpreting the totality of the evidence in the light most favorable to the prosecution, we find no reversible error exists, we find the evidence on all crimes sufficient beyond a reasonable doubt.

### (b) Admissibility of Evidence

The appellant also argues the trial court erred in admitting testimony of Ms. Rackley, the victim's neighbor and friend, regarding a conversation with the victim nine days before the murder. Ms. Rackley testified that the victim called her one evening. The victim, who sounded "very nervous" asked Ms. Rackley to "turn on all [her] outside lights because someone, whom the victim did not name, was in her house to pay a debt. The appellant asserts the testimony was hearsay and testimonial in nature.

Hearsay is generally inadmissible under Tenn. R. Evid. 802. According to Tennessee. Rules of Evidence 801(c), "hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. However, evidence rules allow for exceptions to the general hearsay exclusion. The record reveals the witness testified to her impression of the deceased victim's state of mind in that the victim was nervous and scared because someone she did not fully trust was in her house. The testimony is admissible under two exceptions to the general hearsay exclusion.

Tennessee Rules of Evidence 803(3), Covers "Existing Mental, Emotional, or Physical Condition" and states in part:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed…

Another hearsay exception also applies. Ms. Rackley testified that Ms. Wilburn was nervous and scared. Ms. Wilburn was concerned for her safety and called her friend expressing her fear. The visitor was still in her home. Under *Tenn. R. Evid*. 803(2)

> A excited utterance is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event of condition.

In our view, these exceptions to the hearsay rule applied.

That said, we note that Appellant claims that the hearsay testimony violated his right of confrontation as guaranteed by the Sixth Amendment to the federal constitution and article 1, section 9 of the Tennessee Constitution. See U.S. Const. amend. VI; Tenn Const. Art. I, § 9. Although the provisions are not coterminous, our supreme court "'has largely adopted the standards used by the United States Supreme Court...in determining whether the Tennessee constitutional right has been violated.'" *State v. Parker,* 350 s.w.3D 883, 897-98 (Tenn. 2011) (quoting *State v. Maclin*, 183 S.W.3d 335, 343 (Tenn. 2006); *see also State v. Lewis,* 235 S.W.3d 136, 144 (Tenn. 2007).

In *Crawford v. Washington,* 541 U.S. 36 (2004), The United States Supreme Court departed from decades' long precedent and held for the first time that "[W]here testimonial evidence is at issue ...the Sixth Amendment demands ...unavailability and the prior opportunity for cross-examination." *Crawford,* 541 U.S. at 68. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law." *Id.* In *Crawford,* the Court laid the groundwork for what came to be known as "the primary purpose" test for distinguishing testimonial from non-testimonial statements.

The Court refined the test in later opinions:

> Statements are nontestimonial when made in the course of police interrogation under the circumstances objectively indication that the primary purpose of the interrogation is to enable the police assistance to meet the ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822 (2006) The Court noted that the objective evaluation of "the circumstances in which the encounter occurs and the statements and actions of the parties" is necessary to determine whether a statement is testimonial or nontestimonial. *Michigan v. Bryant* —U.S.—,—, 131 S.Ct.1143, 1156 (2011)

A "statement is nontestimonial if the primary purpose is something other that establishing or proving past events potentially relevant to prosecution, such as providing or enabling assistance to resolve an ongoing emergency." *State v. Franklin*, 308 S.W.3d 799, 817 (Tenn. 2010)

In the present case, Ms. Wilburn's statements to Ms. Rackley were nontestimonial, and consequently, the constitutional right of confrontation did not pose a bar to the admission of the statements.

Despite determining that neither the hearsay rule nor the constitutional provisions for confrontation would bar the admission of the statements in this case, we must conclude that the statements are irrelevant ans should have been excluded pursuant to Tennessee Rule of Evidence 402 upon proper objection.[1] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" Tenn. R. Evid. 401 Pursuant to Rule 402, "[e]vidence which is not relevant is

---

[1]The appellant made a contemporaneous but non-specific objection to Ms. Rackley's testimony.

not admissible." Tenn. R. Evid. 402 In our view, the victims statements to Ms. Rackley about being nervous over a person in her home nine days before the offenses were committed does not make any fact of consequence to the case more or less probable. Thus, the statement should have been excluded upon a proper objection. *See* Tenn. R. Evid. 103 (providing that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected," and when the ruling is one admitting evidence, "a timely objection or motion to strike appears on the record, stating the specific ground of objection us the specific ground was not apparent from the context").

This observation notwithstanding, any error admitting the testimony was harmless, *See* Tenn. R. App. P. 36(b). The evidence against the Appellant was overwhelming and Ms. Rackley's testimony added little to nothing else.

### (c) *Impeachment of Witness Using Prior Conviction over Ten Years Old*

Appellant asserts the trial court abused its discretion and improperly precluded him from impeaching the state's witness, Mr. Gentry, with prior convictions for theft. Garner gave police a statement in which he said Gentry was present when Garner purchased the stolen jewelry from two men at the Star Motel. The defense notified the prosecution of the prior convictions as required under Tennessee Rules of Evidence 609(b). The state introduced evidence of a prior conviction in 2004 for sale of cocaine by Mr. Gentry. Upon direct examination Mr. Gentry did not confirm Mr. Garner's story and denied any knowledge of the incident. The prosecutor objected to a defense question of Mr. Gentry, regarding a prior conviction for theft. Judge Hamilton held an unrecorded sidebar discussion, and the state's motion to exclude was sustained. The following note is in the record:

> "The State's objection to Defendant's admitting into evidence two class A Theft convictions from 1994 and 1996 for impeachment of the State's witness Jerry Gentry is sustained. The Court sustained because the convictions were more than ten years old. Said occurred during sidebar with the court reporter not present."

Mr. Gentry's convictions were greater than ten years old, and the court excluded them under Tennessee Rules of Evidence 609(b).

Tennessee Rules of Evidence 609(b) states in part:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution; if witness was not confined, the ten-year period is measured from the date of conviction rather than release. Evidence of a conviction not qualifying under the preceding sentence is admissible if the

proponent gives the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the interests of justice that the probative value of the conviction, supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Mr. Garner asserts the judge abused his discretion by failing to have a hearing to determine if the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

The sidebar discussion was not memorialized, and no detailed record of the discussion exists. The petitioner has the burden to prove that the judge abused the trial court's discretion. The record of the state's objection to the use of Mr. Gentry's prior convictions based on Tennessee Rules of Evidence 609(b) does not preclude the judge from having considered whether the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect. No record exists allowing this Court to find judicial abuse of discretion. In the absence of clear, contrary evidence, decisions of the trial court are accorded great deference. This type of evidentiary decision is within the purview of the trial court and will not be overturned absent abuse of discretion.

### (d) Admissibility of Recorded Call

Mr. Garner asserts the recorded call between him and Mrs. Garner, recorded at the jail, was inadmissible hearsay and should not have been played for the jury.

A statement by a party opponent is not excluded by the hearsay rule. Tenn. R. Evid. 803(1.2)(A). Furthermore, the statement is not hearsay because it was not used for the truth of the matter asserted. The statements made by the Appellant are admissible as an admission by a party opponent.

The statements were used to prove the Appellant was trying to align his story with that of his wife's. The statements of Appellant are admissible. The truth of the matters discussed during the call was not an issue at trial, only that the conversation took place; and the Appellant and his wife attempted to make their stories match. We hold the trial court properly denied the objection.

### III. Conclusion

Having carefully reviewed the record and based on the foregoing, we affirm the judgments of the trial court in all respects.

_____
PAUL G. SUMMERS, Senior Judge