IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 26, 2019 Session

## STATE OF TENNESSEE v. DARON HALL

**Appeal from the Criminal Court for Knox County**
**No. 109996    Steven Wayne Sword, Judge**

_____

### No. E2018-00699-CCA-R3-CD

_____

After a bifurcated jury trial, Defendant, Daron Hall, was found guilty of three counts of possession of a firearm by a felon, one count of aggravated assault, one count of attempted voluntary manslaughter, and two counts of employing a firearm during the commission of a dangerous felony. Defendant received an effective sentence of twenty-five years. After the denial of a motion for new trial, Defendant appeals to this Court arguing: (1) that the trial court erred by instructing the jury on attempted voluntary manslaughter; (2) the trial court erred by admitting the 911 tapes into evidence; and (3) the evidence was insufficient to support the conviction for attempted voluntary manslaughter. After a review, we determine the trial court did not abuse its discretion in admitting the 911 tapes into evidence, and the evidence was sufficient to support the conviction for attempted voluntary manslaughter. However, we remand the matter to the trial court for correction of the judgment forms to reflect the sentences as imposed by the trial court at the sentencing hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Mark E. Stephens, District Public Defender; and David D. Skidmore, Assistant District Public Defender, for the appellant, Daron Keith Hall.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Phil Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

Defendant was indicted by the Knox County Grand Jury for three variations of possession of a weapon by a convicted felon in Counts One through Three, aggravated assault in Count Four, attempted first degree murder in Count Five, and two variations of employing a firearm during a dangerous felony in Counts Six and Seven.

Much of the proof establishing that Defendant assaulted the victim, John Webb, while using a deadly weapon on October 27, 2016, is not in dispute. The testimony at trial established that the victim and his wife, Leondria Webb, went to the home of Mrs. Webb's father, Merle Green, to gather with various family members prior to Mr. Green's funeral. The Webbs arrived at the house on Kim Lane in their car around 3:30 p.m. with their seventeen-year-old son. When they arrived, they parked in the front of the house. Defendant was on the porch with his brother, Tubbia Green, and another man named Benjamin Franklin Gash, Jr. Defendant is Mrs. Webb's brother. Mr. Gash had travelled from North Carolina to Tennessee for the funeral and had known the deceased Mr. Green for over twenty years.

According to the victim, Defendant approached his vehicle and told him that he was not welcome and that he needed to leave. Both Mrs. Webb and Tubbia Green tried to diffuse the situation by telling Defendant that this was not the "time" for this discussion. According to the accounts of the victim and his wife, Defendant became increasingly agitated.

The victim eventually told Defendant that he was "not gonna keep running from [him]" and that he was not "scared of [him]." As the victim's son walked around the vehicle and into the yard toward the house, Defendant ran toward the victim and pulled out a gun. As soon as the victim could see the gun, he started to run away. Defendant fired the gun. The victim heard at least five or six shots and was in fear for his life as well as the lives of his wife and son. The victim jumped a fence and ran to the next street over. The victim saw a woman outside her house and asked her to call 911 because someone was "trying to kill" him. The victim himself called 911 to report the shooting.

Mr. Gash was seated on the porch at the time that the victim pulled up to the house. He had never met Defendant, whom he described as "[v]ery sociable." When the victim arrived, Defendant's "demeanor" changed. He "became very angry" and told the victim that he would "kill" him and told him to "get up out of here." Mr. Gash estimated that the men argued for "[m]aybe three to five minutes" before Mr. Gash saw Defendant approach the victim. Defendant took "a gun out from behind his - - his back," stepped off the porch, and "charge[d]" toward the victim. Defendant started firing shots and "continued to shoot at the victim while he was running." Mr. Gash heard "[f]our to five

shots." The victim ran behind the house. Mr. Tubbia Green attempted to calm Defendant down after the gunfire. Mr. Gash saw Defendant a short time later in a car.

Multiple 911 calls were placed that day to report shots fired at the house on Kim Lane. One of the callers, who identified herself as Renee Green, reported that Defendant fired shots. The next caller, who did not identify herself, reported that her brother, Defendant, was shooting at her husband. Another caller gave a description of a vehicle in which they saw Defendant leaving the scene of the incident.

Sergeant Amanda Bunch of the Knoxville Police Department responded to the "shooting call." When she arrived, "there was a lot of yelling and screaming, people were holding each other back." According to Sergeant Bunch, it was "chaotic." Sergeant Bunch was able to determine that neither the suspect nor the victim were on the scene.

After other officers arrived on the scene, the victim was located down the street. During his conversation with officers, the victim collapsed and lost consciousness. The victim, who suffered from sarcoidosis,[1] was not on oxygen at the time but was on oxygen as little as two months prior to the incident. He was transported to Fort Sanders, a nearby hospital, for evaluation and treatment. Because he was hospitalized, he was unable to attend the funeral.

Three shell casings were initially recovered from the scene and a fourth shell casing was eventually discovered. A forensic examiner confirmed that the same gun fired all four casings. No weapon was discovered.

The victim testified that this was not the first altercation between him and Defendant. In July of 2015, Defendant came to the victim's house with his "clothes and stuff." Defendant "was acting like he was gonna stay at the house" and told the victim that it was his sister's house and that [the victim] did not do anything at the house. The victim stood up and told him that he could not stay at the house and that he did not want to argue with him. The victim was required to use oxygen at the time because of his sarcoidosis. Defendant hit the victim. The victim "hit the ground." When he woke up, he was "covered in blood." The victim sustained a broken nose, dislocated eye socket, and a severe concussion. Defendant pled guilty to assault after the incident. The victim did not have contact with Defendant from the time he pled guilty to assault until the day of the funeral.

Cynthia Catlett testified for Defendant. She lived nearby on the corner of Forestdale and Kim Lane. She heard shots and saw some people run by her house on the day of the incident. The man she saw running had on a red shirt. He was followed by

---

[1] The victim described sarcoidosis as "a lung disease that attack[s] your lung . . . tissue."

two men "wearing white shirts like t-shirts." She did not see Defendant, who was six feet, eight inches tall, run by her house.

Charles Brandon Smith, another resident of the area, testified that he lived about five houses away from Kim Lane. He heard shots fired and saw "four or five" people running through his yard. They were "pretty well dressed," and all of them seemed to be running away from the scene. He did not see Defendant.

Defendant did not testify. At the conclusion of the proof, the jury found Defendant guilty of aggravated assault, the lesser included offense of attempted voluntary manslaughter, and two counts of employing a firearm during a dangerous felony. In a bifurcated hearing, the State introduced certified judgments indicating Defendant had three prior convictions for robbery and one prior conviction for aggravated robbery, and the jury found Defendant guilty of three counts of possession of a weapon by a convicted felon.

The trial court held a sentencing hearing at which the trial court sentenced Defendant "to a total sentence of 25 years." Defendant filed a motion for new trial, which the trial court denied after a hearing. Defendant filed a timely notice of appeal. On appeal, Defendant challenges the trial court's decision to instruct the jury on attempted voluntary manslaughter, the introduction of the 911 recordings, and the sufficiency of the evidence to support the attempted voluntary manslaughter conviction.

*Analysis*

*I. Introduction of 911 Recordings*

Defendant first argues on appeal that the trial court erred in admitting the 911 recordings into evidence. According to Defendant, the recordings were not properly authenticated. Additionally, Defendant insists that the recordings did not fit within the excited utterance exception to the hearsay rules. Lastly, Defendant argues that the recordings violated the Sixth Amendment because they mention him by name and the people who made the calls were not called as witnesses at trial to authenticate the recordings. The State argues that the recordings were properly admitted pursuant to the excited utterance exception to the hearsay rules. The State also argues that the calls themselves were not testimonial in nature and, therefore, could not violate the Confrontation Clause.

*A. Authentication*

At a pretrial hearing on the issue of the admission of the 911 recordings, Defendant argued that there was not a witness present at the hearing to verify that their voice was the voice on the tape. Additionally, Defendant argued that the records

custodian was also unable to identify any of the callers. Defendant insisted that this was important because several of the callers identified Defendant as the shooter. The trial court reviewed the recordings and deemed them admissible "under the hearsay rule of excited utterance" and "nontestimonial in nature", "assuming the State can authenticate the 911 recordings."

At trial, Mike Mays, the Knox County Emergency Communications District 911 Custodian of Records testified that he was responsible for recording and maintaining all the written, computer, and audio files in the 911 center. He described the procedure for recording calls and explained that calls are normally maintained for three or four years. He certified that he preserved the calls from October 27, 2016, regarding the incident for which Defendant was on trial. Counsel for Defendant noted their "earlier objections" to the introduction of the recordings. The trial court noted the objection but determined that the recordings were admissible.

Tennessee Rule of Evidence 901(a) provides: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Of course, the trial court is the "arbiter of authentication issues," and, accordingly, the court's ruling will not be disturbed absent a showing that the court clearly abused its discretion. *See* Tenn. R. Evid. 901, Advisory Comm'n Cmts.; *State v. Mickens*, 123 S.W.3d 355, 376 (Tenn. Crim. App. 2003). An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d. 319, 337 (Tenn. 2006)); *see State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999).

Defendant argues that because Mr. Mays could not identify any of the voices on the tape who identified Defendant as the shooter, the tapes could not be authenticated. Defendant relies on *State v. Julius E. Parker*, No. 02C01-9606-CR-00188, 1997 WL 195922, at *5 (Tenn. Crim. App. Apr. 23, 1997), *no perm. app. filed*, where this Court determined 911 recordings were not admissible because the records custodian was not able to identify the caller as the robbery victim, to support his argument that the State failed to authenticate the recordings about the shooting. In *Julius E. Parker*, the court, quoting Tennessee Rule of Evidence 901(b)(5), commented that the voices on the tape had to be identified "'by opinion based upon hearing the voice at any time under the circumstances connecting it with the alleged speaker.'" *Id* (quoting Tenn. R. Evid. 901(b)(5)).

Tennessee Rule of Evidence 901, "Requirement of Authentication or Identification" requires "authentication or identification as a condition precedent to admissibility" and is "satisfied by evidence sufficient to the court to support a finding by

the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). In part (b) of Rule 901, ten "illustrations" or examples of authentication are listed. *Id.* In *State v. Hinton*, 42 S.W.3d 113, 127 (Tenn. Crim. App. 2000), this Court noted that the method of authentication in (b)(5), the same method relied upon in *Julius E. Parker*, was "one method by which the content of 9-1-1 tapes may be authenticated." The court went on to say that this method was not a "limitation" on authentication but rather an "illustration" of a type of authentication, specifically noting that authentication "is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter is what its proponent claims." *Hinton*, 42 S.W.3d at 127 (quoting Tenn. R. Evid. 901). Moreover, in this case, the recordings were not admitted to show that the caller was a specific person but rather that the calls were made regarding the event as it was taking place. In this case, the trial court determined that Mr. Mays was the custodian of the records, and that he explained the process for retrieval and storage of the recordings as well as the fact that the recordings were made on the day of the incident. The trial court did not abuse its discretion.

## B. Confrontation Clause

Defendant also claims that the admission of the 911 recordings violated his right of confrontation protected by the federal and Tennessee constitutions. *See generally Crawford v. Washington*, 541 U.S. 36 (2004); *State v. Maclin*, 183 S.W.3d 335 (Tenn. 2006); *see also State v. Dotson*, 450 S.W.3d 1, 62 (Tenn. 2014) (noting that "the same standards govern both" constitutional claims). In order for the Confrontation Clause to be implicated, *Crawford* requires a hearsay statement to be introduced to prove the truth of the matter asserted in a testimonial statement. *See* 541 U.S. at 59 n.9; *Dotson*, 450 S.W.3d at 63. "Thus, the threshold issue for an alleged confrontation clause violation is 'whether a challenged statement is testimonial or nontestimonial.'" *State v. Parker*, 350 S.W.3d 883, 898 (Tenn. 2011) (quoting *Maclin*, 183 S.W.3d at 345).

At the hearing immediately prior to trial, the trial court noted that the "[c]ourt still has to make findings that, in fact, [the recordings are] an excited utterance" but that 911 calls "are [generally] not considered confrontation violations if the call is made to report an ongoing emergency." The trial court listened to the tapes prior to ruling on the matter and determined:

> [T]hose calls were non-testimonial in nature. The primary purpose was to respond to an ongoing emergency. The questions asked by the 911 operators were specific just to how to respond to the call and did not appear to be for the purpose of future litigation, so I don't think it's a Sixth Amendment violation.

In *Maclin*, the Tennessee Supreme Court adopted a case-by-case approach for reviewing courts to determine whether proffered hearsay was "testimonial" and made "'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" 183 S.W.3d at 349 (quoting *Crawford*, 541 U.S. at 52). The court provided the following list of non-exhaustive factors to guide the analysis of whether a statement is "testimonial":

> (1) whether the declarant was a victim or an observer; (2) whether contact was initiated by the declarant or by law-enforcement officials; (3) the degree of formality attending the circumstances in which the statement was made; (4) whether the statement was given in response to questioning, whether the questioning was structured, and the scope of such questioning; (5) whether the statement was recorded (either in writing or by electronic means); (6) the declarant's purpose in making the statements; (7) the officer's purpose in speaking with the declarant; and (8) whether an objective declarant under the circumstances would believe that the statements would be used at a trial.

*Id.*; *see also State v. Franklin*, 308 S.W.3d 799, 818 (Tenn. 2010) (reiterating the relevance of the multi-factor test first articulated in *Maclin*).

In *Davis v. Washington*, 547 U.S. 813 (2006), the United States Supreme Court refined its holding in *Crawford* and adopted a "primary purpose" test requiring courts to examine the context in which a statement is given, thereby abrogating *Maclin*. *See State v. Cannon*, 254 S.W.3d 287, 301-02 (Tenn. 2008). The *Davis* Court held that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822. The victim in *Davis* called 911 to report that her former boyfriend was assaulting her in her home. In response to a series of questions from the 911 operator, the victim described the nature of the complaint and identified her assailant as her former boyfriend. *Id.* at 817-18. After the victim gave information to the 911 operator about the assault and the location of the assailant, the operator advised that the police would soon arrive. The victim did not appear at trial, and the trial court admitted the 911 recording over defense objection. *Id.* at 819. The Supreme Court concluded that the victim's statements were nontestimonial, noting that her 911 call "was plainly a call

for help against bona fide physical threat." *Id.* at 827. The Court found that the victim was describing events "as they were actually happening" and that her statements "were necessary to be able to resolve the present emergency[.]" *Id.*; *cf. Cannon*, 254 S.W.3d at 304 (determining victim's statements to officer who responded to her 911 call were testimonial because they were neither a cry for help nor to provide information to enable officers to address a threatening situation). The *Davis* Court further recognized that what begins as a nontestimonial police interrogation may evolve into testimonial statements after the exigency of the situation has passed. *Id.* at 828-29.

Based on our review, we conclude that the trial court properly found the 911 recordings to be nontestimonial. As in *Davis*, this case involves statements made to a 911 operator "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822; *see also Maclin*, 183 S.W.3d at 347 n.10 (citing cases in which 911 calls were held to be nontestimonial because: "they were (1) initiated by the victim, (2) made for the purpose of seeking police protection or intervention, (3) made informally, or (4) made for the purpose of stopping crime" and citing cases in which 911 calls were considered testimonial because they were made for the purpose of initiating prosecution or where the declarant "would reasonably believe that the statements would be available for use at a later trial"), *abrogated on other grounds by Cannon*, 254 S.W.3d 287. Here, the callers had observed the Defendant shooting at the victim in a residential area. The callers described the events as they were happening and before the danger was over. The 911 dispatcher elicited information to enable law enforcement to locate Defendant and to ensure the public's safety. The fact that the 911 recordings were used in a later prosecution did not make them "testimonial." *See Franklin*, 308 S.W.3d at 819 (citing *United States v. Mendez*, 514 F.3d 1035, 1046 (10th Cir. 2008)). Because we determine the 911 recordings were nontestimonial, they did not implicate the Defendant's right to confrontation. Defendant is not entitled to relief on this issue.

### *C. Hearsay*

Defendant contends that the 911 recordings were not admissible under the excited utterance exception to the general prohibition to hearsay. "Admission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion." *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004). The Tennessee Rules of Evidence provide that all "relevant evidence is admissible," unless excluded by other evidentiary rules or applicable authority. Tenn. R. Evid. 402. Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

"Hearsay" is defined as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Hearsay is not admissible except as allowed by the rules of evidence or other applicable law. Tenn. R. Evid. 802. When a trial court makes factual findings and credibility determinations in the course of ruling on whether an item of evidence is hearsay, these factual and credibility findings are binding on a reviewing court unless the evidence in the record preponderates against them. *State v. Gilley*, 297 S.W.3d at 759-61. The questions of whether a statement is hearsay or fits under one of the exceptions to the hearsay rule are questions of law and subject to de novo review by this Court. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015). One exception to the prohibition against hearsay evidence is for excited utterances. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." Tenn. R. Evid. 803(2). "Underlying the excited utterance exception is the theory that 'circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication.'" *Franklin*, 308 S.W.3d at 823 (quoting *State v. Land*, 34 S.W.3d 516, 528 (Tenn. Crim. App. 2000)).

Defendant concedes that the calls related to the event because the callers described the shooting, the location, and a description of a vehicle that left the scene. However, Defendant complains that there was no testimony in the record that the shooting was an event that could "suspend [the] normal, reflective thought processes of" the callers such that the calls would qualify as excited utterances. We disagree.

The trial court heard evidence that the shooting took place during a gathering of family members prior to a funeral. In reviewing the 911 calls, the callers describe the events as chaotic. The calls came in as the events were still unfolding. The voices of the callers convey the urgency for police assistance. Lastly, the callers were still under the stress or excitement of the event at the time the calls were made. At least two of the callers described the shooting as ongoing. The evidence does not preponderate against the findings of fact made by the trial court. We conclude that the 911 calls fit squarely within the excited utterance exception to the hearsay rule. Therefore, the trial court did not abuse its discretion in admitting the recordings. Defendant is not entitled to relief.

*II. Sufficiency of the Evidence*

Defendant argues on appeal that the evidence was insufficient to prove that he was guilty of attempted voluntary manslaughter because there was no proof that he was "adequately provoked" by the victim, that the victim did not pose a threat to him because he was unarmed, and that the trial court improperly allowed an earlier altercation between the victim and Defendant to be used as the basis for the provocation. Defendant does not

challenge his remaining convictions.[2]  The State insists that the evidence is sufficient to support the conviction and that the proof established provocation.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence.  A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt.  *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).  The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction.  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt.  *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).  As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof.  *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  We may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts.  *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).  "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'"  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Defendant was charged with attempted first degree murder.  However, the jury found Defendant guilty of the lesser included offense of attempted voluntary manslaughter.  "Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner."  T.C.A. § 39-13-211(a).  One is guilty of attempted voluntary manslaughter when he acts "with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part."  T.C.A. § 39-12-101(a)(2).  Voluntary manslaughter is considered a result-of-conduct offense.  *State v. Page*, 81 S.W.3d 781, 788 (Tenn. Crim. App. 2002). "If an offense is defined in terms of causing a certain result, an individual commits an attempt at the point when the individual had done everything believed necessary to accomplish the intended criminal result."  T.C.A. § 39-12-101, Sent. Comm'n Cmts.  A person acts intentionally "when it is the person's conscious objective or desire to engage

---

[2] Because attempted voluntary manslaughter is defined as a "dangerous felony" for purposes of Tennessee Code Annotated section 39-17-1324 but aggravated assault is not, the question of the sufficiency of the evidence of attempted voluntary manslaughter is critically necessary for the employment of a firearm convictions in Counts Six and Seven.  *See* T.C.A. § 39-17-1324(i)(1).

in the conduct or cause the result." T.C.A. § 39-11-302(a). The question of whether a killing or attempted killing is committed under adequate provocation is a question of fact for the jury. *State v. Johnson*, 909 S.W. 2d 461, 464 (Tenn. Crim. App. 1995).

Defendant argues that because the victim was unarmed, he could not have provoked Defendant. We disagree. To support his argument, Defendant cites *State v. Christopher Jerald Crowley*, No. M2016-02263-CCA-R3-CD, 2018 WL 446205, at *4-5 (Tenn. Crim. App. Jan. 17, 2018), *perm. app. denied* (Tenn. Mar. 16, 2018). In *Christopher Jerald Crowley*, this Court found insufficient evidence of provocation where the defendant did not know the victim, the victim was unarmed, and the victim was asleep when he was shot by the defendant. In other words, there was "no evidence that the victim did anything to provoke the Defendant." *Id.* at *5.

In this case, in a light most favorable to the State, the proof shows that in July of 2015, the relationship between Defendant and the victim became severely strained after an incident during which Defendant confronted the victim at the victim's house. Defendant made accusations about the victim in the victim's own home, but the victim refused to discuss the matters with Defendant. Defendant then assaulted the victim, hitting him multiple times until he was unconscious, which resulted in the victim's being sent to the hospital with multiple injuries, including a broken eye socket. The victim pressed charges against Defendant and testified against him in court where Defendant ultimately was convicted of aggravated assault. When the victim's wife's father died a little over a year later, the victim asked his wife to tell her family members that the victim would be attending the funeral. When they arrived at Mr. Green's home and the family gathering prior to the funeral, Defendant saw the victim approach in his car and yelled to him that he was not welcome. Defendant demanded that the victim leave. The victim told Defendant that he would not leave. Defendant charged at the victim and began shooting, taking a substantial step toward completion of the crime. In our view, the jury could have viewed the on-going hostile relationship between Defendant and the victim and Defendant's reaction to the victim's refusal to leave the scene of the family gathering prior to the funeral as evidence of adequate provocation sufficient to lead a reasonable person to react in an irrational manner. Defendant is not entitled to relief on this issue.

### III. *Jury Instructions*

Defendant argues that the trial court erred in instructing the jury on the lesser included offense of attempted voluntary manslaughter "when the facts did not support the charge." Defendant acknowledges that he did not object to the charge and that he is only entitled to relief in the event of plain error. The State agrees that Defendant failed to object to the instructions at trial, claims Defendant did not raise the jury instruction issue in his motion for new trial, and argues that he failed to demonstrate plain error because "none exists." We agree with the State.

First, we note that Defendant failed to object to the instructions at trial. Prior to the close of the State's proof, the trial court had a conversation with counsel for both the State and Defendant about the proposed jury instructions, asking if there were "any specific requests." The trial court specifically stated, "And I've got attempted voluntary," to which counsel for Defendant replied, "Okay." At the close of the State's proof, the trial court stated, "let's talk about instructions one last time here," asking if either side had "any other requests or additions or deletions or objections." Counsel for Defendant felt "good" about the instructions. Tennessee Code Annotated section 40-18-110(d) provides that "[i]f the defendant fails to object to a lesser included offense instruction, the inclusion of that lesser included offense instruction may not be presented as a ground for relief either in a motion for new trial or on appeal." Thus, the issue is waived due to Defendant's failure to object at trial.

Moreover, Defendant failed to raise the jury instruction issue in his motion for new trial. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in . . . jury instructions granted or refused . . . unless the same was specifically stated in a motion for a new trial[.]"); *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005) (holding that failure to object to erroneous definitions of intentionally and knowingly did not waive error but failure to include issue in motion for new trial did). Defendant submitted the following under the heading about the sufficiency of the evidence in his motion for new trial:

> "The record demonstrates there is proof to convict the Defendant of a greater degree of Homicide but a complete absence of evidence regarding adequate provocation. The trial court's instructing the jury on voluntary manslaughter was plain error because no rational trier of fact could have found that the infant's behavior, normal for a child her age, constitutes adequate provocation . . . ." *State v. Edward Joseph Benesch, II*, [No.] M2015-02124-CCA-R3-CD[, 2017 WL 3670196, at *18 (Tenn. Crim. App. Aug. 25, 2017), *no perm. app. filed*]. . . .

Defendant next comments that the "State's theory was that [Defendant] was retaliating for a prior argument between the two that happened months before, and that the victim's mere appearance at a family gathering was what instigat[ed] the argument." As a result, Defendant "suggest[ed] that under existing case law[,] this is not adequate provocation that is required to find somebody guilty of voluntary manslaughter or attempted voluntary manslaughter." We agree with the State that although Defendant "quoted a case dealing with an erroneous jury instruction for voluntary manslaughter [in his motion for new trial], [D]efendant did not claim that the trial court erred by instructing the jury on attempted voluntary manslaughter." In our view, this citation to a prior case does not fairly raise the jury instruction issue in the motion for new trial.

- 12 -

Tennessee Rule of Appellate Procedure 36(b) states: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Because Defendant failed to object at trial and failed to include the issue in his motion for new trial, we are limited to reviewing the issue for plain error. *See* Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."); *Faulkner*, 154 S.W.3d at 58. Issues not raised in the trial court may be reviewed in the discretion of the appellate court for plain error when these five factors are established: (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law was breached; (c) a substantial right of the accused was adversely affected; (d) the defendant did not waive the issue for tactical reasons; and (e) consideration of the error is necessary to do substantial justice. *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016); *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000).

In this case, the trial court did not breach a clear and unequivocal rule of law. A defendant is entitled to "a correct and complete charge of the law governing the issues raised by the evidence presented at trial." *State v. Brooks*, 277 S.W.3d 407, 412 (Tenn. Crim. App. 2008) (citing *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995)). The trial court charged the jury with attempted voluntary manslaughter as a lesser included offense of attempted premediated murder. Tennessee Code Annotated section 40-19-110(g)(2) provides that "voluntary manslaughter is a lesser included offense of premeditated first degree murder[.]" An offense is a lesser included offense if the offense "is an attempt to commit the offense charged or an offense that otherwise meets the definition of a lesser included offense in subdivision (f)(1)[.]" T.C.A. § 40-19-110(f)(3). Thus, attempted voluntary manslaughter is clearly a lesser included offense of attempted premeditated murder. The trial court is required to charge a lesser included offense only when "the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense." T.C.A. § 40-18-110(a). In order to make this determination, the trial judge views the evidence "in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of such evidence." *Id.* The trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense. Above, we determined that the evidence was sufficient to support the conviction for attempted voluntary manslaughter. Therefore, the trial court did not breach a clear and unequivocal rule of law by instructing the jury on this lesser included offense. Consequently, Defendant is not entitled to plain error relief on this issue.

*IV. Sentences and Judgment Forms*

At the sentencing hearing, the trial court sentenced Defendant to a total sentence of twenty-five years and determined that Counts One, Two, and Three for felon in possession of a weapon "should merge into a single conviction." Defendant was sentenced to thirteen years to serve as a Range III, persistent offender for each of these convictions. On Count Four, aggravated assault, the trial court sentenced Defendant to thirteen years to run concurrently with the sentences in counts One, Two, and Three. On Count Five, the attempted voluntary manslaughter conviction, the trial court sentenced Defendant as a career offender to twelve years at 60 percent "by law" to run concurrently with Count One. On Count Six, the trial court sentenced Defendant to thirteen years, to run consecutively to the sentence in Count Five. The trial court did not discuss Count Seven during the pronouncement of the sentence, but the judgment form for Count Seven indicates that it is to be served "consecutive to Count 4." The trial court found there was no "need to go beyond the consecutive sentencing of the employing a firearm to the attempted voluntary manslaughter." The trial court explained that Defendant was receiving a "total sentence of 25 years. The first 12 will be at 60 percent, the next ten will be at a hundred percent, and then the last three will be at a sentencing rate of 45 percent."

There are several discrepancies between the judgment forms as entered by the trial court and the sentences as pronounced by the trial court at the sentencing hearing. The judgment forms, as filed in the trial court and submitted to this Court, reflect an aggregate sentence of twenty-six years, rather than the twenty-five years announced by the trial court at the sentencing hearing. The transcript controls when the record shows a conflict between the judgment form and the transcript. *See State v. Moore*, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). On remand, the trial court should correct the judgments to reflect the sentences as imposed by the trial court at the sentencing hearing.

Specifically, on remand, the trial court should correct the judgment form in Count One to remove the language indicating Count One is to be served concurrently with Count Seven. Counts One, Two, and Three shall remained merged. The judgment form for Count Four reflects: "109996 Count 4 runs concurrent with 109996 Count 7." The trial court should correct the judgment form in Count Four to reflect that the thirteen-year sentence is ordered to run concurrently with the sentence in Count One. The trial court should correct the judgment form in Count Five to indicate that the twelve-year sentence is to run concurrently to the thirteen-year sentence in Count One and Count Four. Next, the trial court should correct the judgment form in Count Six to state that it merges with Count Seven. Additionally, the judgment form in Count Six fails to indicate that it is to be served consecutively to Count Five. The trial court should correct the judgment form in Count Six to indicate that the sentence of thirteen years is to be served consecutively to the twelve-year sentence in Count Five. The judgment form in Count Seven should be corrected to indicate that Count Seven merges with Count Six. These corrections are consistent with the sentence that the trial court meticulously fashioned and announced at

the conclusion of the sentencing hearing, for the resolution of an oddly confusing and duplicitous indictment presented by the State.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed and remanded to the trial court for correction of the judgments as stated.

_____
TIMOTHY L. EASTER, JUDGE